# PLAQUEMINES TROPICAL FRUIT COMPANY *v.* HENDERSON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 204. Argued April 15, 1898. — Decided May 2, 1898.

The courts of a State may take cognizance of a suit brought by the State, in its own courts, against citizens of other States, subject to the right of the defendant to have such suit removed to the proper Circuit Court of the United States, whenever the removal thereof is authorized by act of Congress, and subject also to the authority of this court to review the final judgment of the state court, if the case be one within its appellate jurisdiction.

THE case is stated in the opinion.

*Mr. Duane E. Fox* for appellant. *Mr. J. Ward Gurley* was on his brief.

*Mr. Victor Leovy* for appellees. *Mr. Henry J. Leovy, Mr.*

*Joseph Paxton Blair* and *Mr. Alexander Porter Morse* were on his brief.

Mr. Justice Harlan delivered the opinion of the court.

This suit was commenced February 11, 1895, in the Circuit Court of the United States for the Eastern District of Louisiana by the Plaquemines Tropical Fruit Company, a New Jersey corporation, against the defendants in error William Henderson and Henry J. Leovy, citizens of Louisiana.

It is, in effect, a suit to quiet the title of the plaintiff to certain lands in the Parish of Plaquemines in the State, and to restrain the defendants from committing trespasses thereon.

The defendants filed a joint and several plea, in which it was averred: That in 1892 a suit was instituted by the State of Louisiana in the Civil District Court of the Parish of Orleans, Louisiana, against the Plaquemines Tropical Fruit Company, Charles C. Buck the vice president of that company and a citizen of Maryland, and others, in which suit the State sought a decree adjudging it to be the owner of certain lands within its limits; in which action, the defendants having appeared, it was found by the verdict of a jury, and in accordance with the verdict it was adjudged by the court, that the lands here in question belonged to the State, and that the Plaquemines Tropical Fruit Company and Buck had no title thereto; that such judgment, upon the appeal of the company and Buck, was affirmed by the Supreme Court of Louisiana; that a writ of error sued out by the same defendants to this court was dismissed; that the lands the title to which is involved in this suit are part of those the title to which was involved in that action; that Henderson and Leovy acquired title from the State after the above judgment obtained by it had become final; and that such judgment remained unreversed and unmodified.

The defendants Henderson and Leovy pleaded the above proceedings and the judgment obtained by the State in bar of the present suit.

At the hearing below, the plaintiff having admitted the

correctness in point of fact of the defendants' plea in bar, it was adjudged that the plea was sufficient. The bill was ac-·cordingly dismissed.

The contention of the appellant is that the Civil District Court of the Parish of Orleans could not, consistently with the Constitution of the United States, take cognizance of any suit brought by the State of Louisiana against citizens of other States, and, consequently, its judgment, now pleaded in bar, was null and void. If that contention be overruled the judgment below must be affirmed; otherwise it must be reversed, and the cause remanded with directions to hold the plea insufficient.

The appellant, in support of its contention, insists that the entire judicial power surrendered to the United States by the people of the several States vested absolutely in the United States under the Constitution; that by that instrument the nation acquired certain portions of the judicial power naturally inherent in sovereignty; that thereafter a state court could not, without the expressed consent of the United States, take cognizance of a case embraced in such cession of judicial power; and that the judicial power of the United States, not distributed by the Constitution itself, cannot be so distributed that a state court may take cognizance of a case or controversy to which that power is extended, *if* its determination thereof is not made by Congress subject to reëxamination by some court of the United States.

These propositions applied to the case before us mean that the Civil District Court of the Parish of Orleans was without jurisdiction to render judgment in the above suit instituted by the State, because there was no provision in the acts of Congress whereby its judgment could be reviewed by some court of the United States.

The Constitution provides.—

." The judicial power of the United States shall be vested in one Supreme Court and in such inferior courts as the Congress may from time to time ordain and establish. . . ." Art. III, Sec. 1.

." The judicial power shall extend to all cases in law and

equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority; to all cases affecting ambassadors, other public ministers and consuls; to all cases of admiralty and maritime jurisdiction; to controversies to which the United States shall be a party; to controversies between two or more States; between a State and citizens of another State; between citizens of different States; between citizens of the same State claiming lands under grants of different States, and between a State, or the citizens thereof, and foreign states, citizens or subjects. Art. III, Sec. 2.

"In all cases affecting ambassadors, other public ministers and consuls, and those in which a State shall be party, the Supreme Court shall have original jurisdiction. In all other cases before mentioned, the Supreme Court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such regulations as the Congress shall make." Ib.

Do the words, "the judicial power shall extend . . . to controversies . . . between a State and citizens of other States," and the words "in all cases . . . in which a State shall be party, the Supreme Court shall have original jurisdiction," necessarily manifest a purpose to exclude all such controversies from cognizance by the courts of the several States? Was it intended that the Constitution should, by its own force, without legislation by Congress, divest the courts of the States of jurisdiction of cases or controversies to which the judicial power of the United States was extended?

These questions were the subject of earnest consideration while the Constitution was before the people of the United States for acceptance or rejection. It was contended by some who recommended its rejection that the proposed Constitution, without legislation by Congress, would give to the one Supreme Court established by it, and to such other courts as Congress should from time to time create, *exclusive* jurisdiction in all such cases or controversies. That interpretation was disputed, and Hamilton in the Federalist said: "The principles established in a former paper teach us that the State will retain all *preëxisting* authorities, which may not be exclusively delegated

to the Federal head ; and that this exclusive delegation can only exist in one of three cases ; where an exclusive authority is, in express terms, granted to the Union ; or where a particular authority is granted to the Union, and the exercise of a like authority is prohibited to the States ; or, where an authority is granted to the Union, with which a similar authority in the States would be utterly incompatible. Though these principles may not apply with the same force to the judiciary as to the legislative power, yet I am inclined to think that they are, in the main, just with respect to the former, as well as the latter. And under this impression I shall lay it down as a rule that the state courts will *retain* the jurisdiction they now have, unless it appears to be taken away in one of the enumerated modes." He recognized the fact that there was apparent support to the objection referred to in the clause " the *judicial power* of the United States *shall be vested* in one Supreme Court, and in *such* inferior courts as the Congress shall from time to time ordain and establish." That clause, he said, " might either be construed to signify that the supreme and subordinate courts of the Union should alone have the power of deciding those causes, to which their authority is to extend ; or simply to denote that the organs of the national judiciary should be one Supreme Court, and as many subordinate courts as Congress should think proper to appoint ; in other words, that the United States should exercise the judicial power with which they are to be invested, through one supreme tribunal, and a certain number of inferior ones, to be instituted by them. The first excludes, the last admits, the concurrent jurisdiction of the state tribunals. And as the first would amount to an alienation of state power by implication, the last appears to me the most defensible construction." He also said that the judicial power of every government " looks beyond its own local or municipal laws, and in civil cases lays hold of all subjects of litigation between parties within its jurisdiction, though the causes of dispute are relative to the laws of the most distant part of the globe. Those of Japan, not less than of New York, may furnish the objects of legal discussion to our courts. When in addition to this we con-

sider the state governments and the national government as they truly are, in the light of kindred systems and as parts of one whole, the inference seems to be conclusive that the state courts would have a concurrent jurisdiction in cases arising under the laws of the Union, where it was not expressly prohibited." Federalist, No. 82.

The first Congress acted upon this view of the scope and effect of the Constitution when it passed the Judiciary Act of September 24, 1789, c. 20, creating the Circuit and District Courts of the United States and defining their jurisdiction. 1 Stat. 73. By that act it was declared that the District Courts should have " exclusively of the courts of the several States " cognizance of specified crimes and of certain named civil causes or suits, and cognizance " concurrent with the courts of the several States or the Circuit Courts, as the case may be," of certain other causes or suits. By that act also the Circuit Courts were given cognizance, " concurrent with the courts of the several States," of all suits of a civil nature at common law or in equity where the matter in dispute exceeded, exclusive of costs, the sum or value of five hundred dollars, and the United States were plaintiffs or petitioners, or where an alien was a party, or where the suit was between a citizen of the State in which it was brought and a citizen of another State. And by the same act it was provided that " the Supreme Court shall have exclusive jurisdiction of all controversies of a civil nature where a State is a party, except between a State and its citizens; *and except also between a State and citizens of other States*, or aliens, in which latter case it shall have original, but not exclusive, jurisdiction, . . . and original, but not exclusive jurisdiction of all suits brought by ambassadors or other public ministers, or in which a consul or vice consul shall be a party." The act also made provision for the removal of a suit commenced in a state court against an alien, or by a citizen of one State against a citizen of another State, if the matter in dispute exceeded the above sum or value; but it contained no provision giving the Circuit Courts original jurisdiction of a suit by a State against a citizen of another State, nor for the removal into a subordi-

nate Federal court, of a suit brought by a State in one of its own courts against a citizen of another State. Nor did that act provide for the review by this court of the final judgment of the state court simply because it was rendered in a suit brought by a State against a citizen of another State which involved no question of a Federal nature.

So, that in the first judiciary act — passed by a Congress many of whose members, as was the eminent jurist who drew the act, were delegates in the convention that framed the Constitution — we have a contemporaneous interpretation of the clauses relating to the exercise of the judicial power of the United States, which negatives the suggestions now made on behalf of the appellant.

It cannot be doubted that each of the original States had, prior to the adoption of the Constitution, complete and exclusive jurisdiction by its judicial tribunals over all legal questions, of whatsoever nature, capable of judicial determination, and involved in any case within its limits between parties over whom it could exercise jurisdiction. *Tennessee* v. *Davis*, 100 U. S. 257.

If it was intended to withdraw from the States authority to determine, by its courts, all cases and controversies to which the judicial power of the United States was extended, and of which jurisdiction was not given to the national courts exclusively, such a purpose would have been manifested by clear language. Nothing more was done by the Constitution than to extend the judicial power of the United States to specified cases and controversies; leaving to Congress to determine whether the courts to be established by it from time to time should be given exclusive cognizance of such cases or controversies, or should only exercise jurisdiction concurrent with the courts of the several States.

This was the view taken of this question by Chancellor Kent in his Commentaries. Referring to the clauses of the Constitution relative to the judicial power of the United States, he said: "The conclusion then is, that in judicial matters the concurrent jurisdiction of the state tribunals depends altogether upon the pleasure of Congress, and may be

revoked and extinguished whenever they think proper, in every case in which the subject-matter can constitutionally be made cognizable in the Federal courts, and that without an express provision to the contrary the state courts will retain a concurrent jurisdiction in all cases where they had jurisdiction originally over the subject-matter." 1 Kent's Com. 400.

In *Gettings* v. *Crawford*, Taney's Dec. 1, the question was considered whether the ninth section of the Judiciary Act of 1789, giving jurisdiction to the District Court of the United States of cases against consuls and vice consuls, was consistent with the clause of the Constitution providing that "in all cases affecting ambassadors, other public ministers and consuls, and those in which a State shall be a party, the Supreme Court shall have original jurisdiction." It was held that those words did not expressly exclude the jurisdiction of other courts of the United States in the cases mentioned. Chief Justice Taney observing : " The true rule in this case, is, I think, the rule which is constantly applied to ordinary acts of legislation, in which the grant of jurisdiction over a certain subject-matter to one court does not, of itself, imply that that jurisdiction is to be exclusive. In the clause in question there is nothing but mere affirmative words of grant, and none that import a design to exclude the subordinate jurisdiction of other courts of the United States on the same matter." That case, it is true, did not present any question as to the jurisdiction of the state courts, but it affirms the rule that the grant of original jurisdiction to a particular court in enumerated cases does not, of itself, import that the jurisdiction of that court is exclusive in such cases. If the clause just quoted is not to be interpreted as giving this court exclusive jurisdiction in cases affecting consuls, upon like grounds it cannot be interpreted as giving this court exclusive jurisdiction in suits instituted by a State, simply because of the provision giving the Supreme Court original jurisdiction where the State is a party.

But the cases most directly in point are those reported under the title of *Ames* v. *Kansas*, 111 U. S. 449, 464. One was a suit against the Kansas Pacific Railway, a corporation organ-

ized under the laws of the United States; the other a suit against certain persons constituting the board of directors of the Union Pacific Railway Company and citizens of States other than Kansas. Both suits were brought by the State in one of its own courts. It was contended that as the State was a party to those suits, this court had exclusive jurisdiction. After observing that the evident purpose of the Constitution was to open and keep open the highest court of the nation for the determination, in the first instance, of suits involving a state or a diplomatic or commercial representative of a foreign government, this court said: "So much was due to the rank and dignity of those for whom the provision was made; but to compel a State to resort to this one tribunal for the redress of all its grievances, or to deprive an ambassador, public minister or consul of the privilege of suing in any court he chose having jurisdiction of the parties and the subject-matter of his action, would be, in many cases, to convert what was intended as a favor into a burden. Acting on this construction of the Constitution, Congress took care to provide [in the original judiciary act] that no suit should be brought *against* an ambassador or other public minister except in the Supreme Court, but that he might sue in any court he chose that was open to him. As to consuls, the commercial representatives of foreign governments, the jurisdiction of the Supreme Court was made concurrent with the District Courts, and suits of a civil nature could be brought against them in either tribunal. With respect to States it was provided that the jurisdiction of the Supreme Court should be exclusive in all controversies of a civil nature where a State was a party, except between a State and its citizens, and *except*, also, between a State and citizens of other States, or aliens, in which latter case its jurisdiction should be original, but not exclusive. Thus, the original jurisdiction of the Supreme Court was made concurrent with any other court to which jurisdiction might be given in suits between a State and citizens of other States, or aliens. No jurisdiction was given in such cases to any other court of the United States, and the practical effect of the enactment was, therefore, to give the Supreme Court

exclusive original jurisdiction in suits against a State begun
without its consent, and to allow the State to sue for itself in
any tribunal that could entertain its case.   In this way States,
ambassadors and public ministers were protected from the
compulsory process of any court other than one suited to their
high positions, but were left free to seek redress for their own
grievances in any court that has the requisite jurisdiction.   No
limits were set on their powers of choice in this particular.
This, of course, did not prevent a State from allowing itself
to be sued in its own courts or elsewhere in any way, or to
any extent, it chose."

And in *Robb* v. *Connolly*, 111 U. S. 624, 636, it was held
that in defining and regulating the jurisdiction of the courts
of the United States, Congress has taken care not to exclude
the jurisdiction of the state courts from every case to which
by the Constitution the judicial power of the United States
extends.   The reason given for this view was that upon the
state courts, equally with the courts of the Union, rested the
obligation to guard, enforce and protect every right granted
or secured by the Constitution of the United States, and the
laws made in pursuance thereof, whenever those rights were
involved in any suit or proceeding before them ; for, the court
said, " the judges of the state courts are required to take an
oath to support that Constitution, and they are bound by it,
and the laws of the United States made in pursuance thereof,
and all treaties made under their authority, as the supreme
law of the land, 'anything in the constitution or laws of any
State to the contrary notwithstanding.' "

It is said that the present case differs from *Ames* v. *Kansas*,
in that the latter was a suit arising under the Constitution and
laws of the United States, and was, therefore, removable into
the Circuit Court of the United States, while the present suit
was not removable from the state court under any statute
regulating the jurisdiction of the courts of the United States.
But that difference only shows that Congress has not seen
proper to provide for the removal from a state court of a suit
brought by the State against citizens of other States and in-
volving no question of a Federal nature, nor for the review

by this court upon appeal or writ of error of the final judgment in such a suit. It is for Congress to say how much of the judicial power of the United States shall be exercised by the subordinate courts it may establish from time to time. Its failure to invest the national courts with jurisdiction by removal from the state courts of a suit brought by a State against citizens of other States which involves no Federal question, cannot have the effect to deprive the States of the right which they possessed prior to the adoption of the Constitution to submit to one of its own courts all matters in which it was concerned and which were capable of judicial determination, to be there finally adjudicated as between the State and the parties who were within its jurisdiction so as to be bound by any judgment rendered, and who were not, by reason of their representative character or for other cause, placed exclusively under Federal jurisdiction, and exempted altogether from process issuing from state tribunals.

As, under the long-settled interpretation of the Constitution, the mere extension of the judicial power of the United States to suits brought by a State against citizens of other States did not, of itself, divest the state courts of jurisdiction to hear and determine such cases, and as Congress has not invested the national courts with exclusive jurisdiction in cases of that kind, it follows that the courts of a State may, so far as the Constitution and laws of the United States are concerned, take cognizance of a suit brought by the State in its own courts against citizens of other States; subject, of course, to the right of the defendant to have such suit removed to the proper Circuit Court of the United States, whenever the removal thereof is authorized by the acts of Congress, and subject, also, to the authority of this court to review the final judgment of the state court, if the case be one within our appellate jurisdiction.

For the reasons stated, it is adjudged that the court below did not err in sustaining the plea, and its judgment is

*Affirmed.*