### LEWIS PUB. CO. v. WYMAN et al.

(Circuit Court, E. D. Missouri, E. D. April 4, 1907.)

No. 5,437.

1. COURTS—JURISDICTION OF FEDERAL COURTS—NATURE AND SOURCE.

The courts of the United States inferior to the Supreme Court, being statutory courts created by Congress, possess only those powers which are expressly granted to them by statute, and until Congress confers upon them jurisdiction of a matter authorized by the Constitution of the United States they cannot exercise it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 792, 793.]

2. SAME—JURISDICTION OF STATE COURTS—NATURE AND SOURCE.

State courts of general jurisdiction, until divested by an act of Congress of jurisdiction in causes which, under the national Constitution, may be conferred upon the courts of the United States exclusively, may, so far as the Constitution and laws of the United States are concerned, exercise jurisdiction over them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 1326.]

3. SAME—CONCURRENT JURISDICTION—STATE AND FEDERAL COURTS.

Subdivision 4 of section 629, Rev. St. [U. S. Comp. St. 1901, p. 503], does not confer exclusive jurisdiction on the courts of the United States

in controversies arising under the postal laws of the United States, but only concurrent with the courts of the states, and for this reason state courts may take cognizance of such causes.

4. REMOVAL OF CAUSES—SUBJECT OF CONTROVERSY—POSTAL LAWS.

Although Congress has not authorized by special act the removal of causes arising under the postal laws of the United States, if the bill on its face shows that the controversy is one arising under the postal laws of the United States, and the value of the matter in controversy exceeds $2,000, exclusive of interest and costs, such cause is removable from the state to a national court, under section 2 of the act of March 3, 1887, c. 373, 24 Stat. 553, as corrected by the act of August 13, 1888, c. 866, 25 Stat. 434 [U. S. Comp. St. 1901, p. 509].

(Syllabus by the Court.)

On Demurrer to the Jurisdiction and Motion to Remand.

Barclay & Fauntleroy and Carter, Collins & Jones, for complainant. Chester H. Krum and H. H. Glassie, for defendants.

TRIEBER, District Judge. This action was originally commenced in the circuit court of the city of St. Louis, state of Missouri, and on petition of the defendants removed to this court. Defendants demurred to the jurisdiction of the state court, claiming that that court was wholly without jurisdiction to entertain the bill, the national courts having exclusive original jurisdiction of all controversies involving the actions of the executive department in postal matters.

The bill filed in the state court, in so far as it affects the jurisdictional question, may be briefly stated as follows: The complainant is the publisher of a monthly magazine which had theretofore, in conformity with the acts of Congress and the rules and regulations of the Post Office Department, been admitted to be sent through the mails at second-class rates; that it has a circulation exceeding 1,000,000 copies, and that the privilege of sending the magazine at these rates is a very valuable one; that on March 4, 1907, the Postmaster General, without any hearing or notice to complainant and in violation of the act of Congress approved March 3, 1901, c. 851, § 1, 31 Stat. 1107 [U. S. Comp. St. 1901, p. 2655], annulled this privilege, and the defendant, the postmaster at St. Louis, where said publication is mailed, has notified complainant that in conformity with the order of the Postmaster General the second-class privilege of complainant for his said magazine has been revoked, and that it will have to be sent as third-class matter, which will cause an increase in the postage to complainant of probably $20,000 a month, and practically destroy its business and cause irreparable damage. The prayer of the bill is for an injunction to prevent the enforcement of this order of the Postmaster General by the defendants, the postmaster and assistant postmaster at St. Louis.

The complainant also filed a motion to remand the cause to the state court, upon the ground that the action was not removable to this court. The fact that the defendants who now demur to the jurisdiction caused the removal of the cause to this court does not estop them from questioning the jurisdiction of the court from which it was removed. Cowley v. Northern Pacific R. R. Co., 159 U. S. 569, 16 Sup. Ct. 127, 40 L. Ed. 263; Wabash Western Ry. Co. v. Brow, 164 U. S. 271, 17 Sup. Ct. 126, 41 L. Ed. 431; De Lima v. Bidwell, 182 U. S. 1, 21 Sup.

Ct. 743, 45 L. Ed. 1041; Tootle v. Coleman, 107 Fed. 41, 46 C. C. A. 132, 57 L. R. A. 120.

Are the courts of the states without jurisdiction to grant relief to a citizen who claims that by reason of some action of an official of the Post Office Department he has been greatly injured? Or, in other words, have the national courts exclusive jurisdiction of cases of that nature? In the view which this court takes it is unnecessary to determine whether an action of this nature may be maintained under section 3833, Rev. St. [U. S. Comp. St. 1901, p. 2610], or whether Teal v. Felton, 12 How. 284, 13 L. Ed. 990, is applicable. The law is well settled that the courts of the United States inferior to the Supreme Court are mere creatures of Congress, and possess no powers except those specifically granted to them by an act of Congress, and this limitation applies to all causes which, under the Constitution, Congress might have granted to the national courts jurisdiction to hear and determine. As early as 1799, in Turner v. Bank of North America, 4 Dall. 10, 1 L. Ed. 718, it was said:

"The political truth is that the disposal of the judicial power (except in a few specified instances) belongs to Congress, and Congress is not bound to enlarge the jurisdiction of the federal courts to every subject in every form which the Constitution might warrant."

To the same effect are United States v. Hudson, 7 Cranch, 32, 3 L. Ed. 259; Cary v. Curtis, 3 How. 245, 11 L. Ed. 576; Sheldon v. Sill, 8 How. 448, 12 L. Ed. 1147; Stevenson v. Fain, 195 U. S. 165, 25 Sup. Ct. 6, 49 L. Ed. 142; Ex parte Wisner, 203 U. S. 449, 455, 27 Sup. Ct. 150, 51 L. Ed. ——; Case Sewing Machine Companies, 18 Wall. 553, 577, 21 L. Ed. 914.

In the last-cited case the court say:

"Congress, it may be conceded, may confer such jurisdiction upon the circuit courts as it may see fit, within the scope of the judicial power of the Constitution not vested in the Supreme Court; but as such tribunals are neither created by the Constitution nor is their jurisdiction defined by that instrument, it follows that, inasmuch as they are created by an act of Congress, it is necessary in every attempt to define their power to look to that source as the means of accomplishing that end. Federal judicial power beyond all doubt has its origin in the Constitution; but the organization of the system and the distribution of the subjects of jurisdiction among such inferior courts as Congress may from time to time ordain and establish, within the scope of the judicial power, always have been and of right must be the work of the Congress."

Prior to the adoption of the Constitution no one will deny that the courts of the states had complete jurisdiction over all legal questions capable of judicial determination. Article 3 of the Constitution defines the powers which Congress may confer on the national courts. In the first judiciary act, that of September 24, 1789, c. 20, 1 Stat. 73, the act creating the national courts inferior to the Supreme Court and which but for the acts of Congress would not exist, the jurisdiction of the circuit courts in civil actions was limited to cases in which the United States were plaintiffs or petitioners and actions depending entirely on a diversity of citizenship. The first act conferring upon the courts of the United States original jurisdiction in cases other than that

of diversity of citizenship was the second act creating the bank of the United States, April 10, 1816, c. 44, 3 Stat. 266. Since then several other special acts conferring jurisdiction on the national courts in cases in which a federal question is involved have been passed—the act of February 25, 1863, c. 58, 12 Stat. 665, providing for the establishment of national banks, and the act of July 27, 1868, c. 255, § 2, 15 Stat. 223, authorizing corporations created by acts of Congress to remove causes from the state to the national courts, but the first general act which extended the jurisdiction of the national courts to cases involving a federal question was the judiciary act of March 3, 1875, c. 137, 18 Stat. 470 [U. S. Comp. St. 1901, p. 508]. Prior thereto the state courts had exclusive jurisdiction of causes of that nature, subject to review by the Supreme Court of the United States, under section 25 of the judiciary act of September 24, 1789. The serious objections made prior to the adoption of the Constitution of the United States, by reason of the fear that under article 3, § 2, of the Constitution the state courts would be deprived of a great deal of their jurisdiction, induced Mr. Hamilton to dispute that contention in The Federalist. In No. 82 of that publication he said:

"The principles established in a former paper teach us that the states will retain all the pre-existing authorities which may not be exclusively delegated to the federal head, and that this exclusive delegation can only exist in one of three cases—where an exclusive authority is in express terms granted to the Union, or where a particular authority is granted to the Union and the exercise of a like authority is prohibited to the states, or where an authority is granted to the Union with which a similar authority in the states would be utterly incompatible. Though these principles may not apply with the same force to the judicial as to the legislative department, yet I am inclined to think that they are in the main just with respect to the former as well as to the latter, and under this impression I shall lay down as a rule that the state courts will retain the jurisdiction they now have, unless it appears to be taken away in one of the enumerated modes. The only thing in the present Constitution which wears the appearance of confining the causes of the federal cognizance to the federal courts is contained in this passage, 'The judicial power of the United States shall be vested in one Supreme Court and in such inferior courts as the Congress shall from time to time ordain and establish.' This might either be construed to signify that the Supreme Court and subordinate courts of the Union should alone have the power of deciding those causes to which their authority is to extend, or simply to denote that the organs of the national judiciary should be one Supreme Court and as many subordinate courts as Congress should think proper to appoint; in other words, that the United States should exercise the judicial power with which they are to be invested through one supreme tribunal and a certain number of inferior ones to be instituted by them. The first excludes, the last admits, the concurrent jurisdiction of the state tribunals, and as the first would amount to an alienation of state power by implication, the last appears to me the most defensible construction. * * * I mean, therefore, to contend that the United States, in the course of legislation upon the objects entrusted to their direction, may not commit the decision of causes arising upon the particular regulation to the federal courts solely, if such a measure should be deemed expedient, but I hold that the state courts will be divested of no part of their primitive jurisdiction further than may relate to an appeal, and I am even of opinion that in every case in which they were not expressly excluded by the future acts of the national Legislature they will, of course, take cognizance of the causes to which those acts may give birth. This I infer from the nature of judiciary power and from the general genius of the system. The judiciary power of every government looks beyond its own local or municipal laws and in civil cases lays hold of all subjects of

litigation between parties within its jurisdiction, though the causes of dispute are relative to the laws of the most distant part of the globe."

Oliver Ellsworth, a member of the convention which framed the Constitution and the reputed author of the judiciary act of 1789, in answer to George Mason (who was one of the members of that convention who refused to sign that instrument and opposed its adoption, and one whose objections was that the judiciary of the United States is so constructed and extended as to absorb and destroy the judiciaries of the several states, thereby rendering law as tedious, intricate, and expensive, and justice as unattainable by a great part of the community as in England, and enable the rich to oppress and ruin the poor), said:

"It [the judicial power of the United States] extends only to the objects and cases specified, and wherein the national peace or rights, or the harmony of the states, is concerned, and not to controversies between citizens of the same state (except where they claim under grants of different states); and nothing hinders but the supreme federal court may be held in different districts, or in all the states, and that all the cases, except the few in which it has original and not appellate, jurisdiction, may, in the first instance, be had in the state courts, and those trials be final, except in cases of great magnitude." 2 Federalist and Other Constitutional Papers, Federalist Statesman Series, p. 578 (the original having been published in the Connecticut Courant of November 26, 1787, over the non de plume of "Landholder").

In Plaquemines Fruit Co. v. Henderson, 170 U. S. 511, 18 Sup. Ct. 685, 42 L. Ed. 1126, this question was again before the Supreme Court, and Mr. Justice Harlan, speaking for the court, after a very thorough review of all the authorities, epitomized the law to be:

"As under the long-settled interpretation of the Constitution the mere extension of the judicial power of the United States to suits brought by a state against citizens of other states did not, of itself, divest the state courts of jurisdiction to hear and determine such cases, and as Congress has not invested the national courts with exclusive jurisdiction in cases of that kind, it follows that the courts of a state may, so far as the Constitution and laws of the United States are concerned, take cognizance of a suit brought by the state in its own courts against citizens of other states, subject, of course, to the right of the defendant to have such suit removed to the proper Circuit Court of the United States, whenever the removal thereof is authorized by the acts of Congress, and subject, also, to the authority of this court to review the final judgment of the state court, if the case be one within our appellate jurisdiction." 170 U. S. 521, 18 Sup. Ct. 689, 42 L. Ed. 1126.

Whether Congress could, under the Constitution, confer such exclusive jurisdiction on the national courts in cases of this kind it is unnecessary to determine in this case, as it has never attempted to do so, so far as the research of the learned counsel or of the court has been able to find. The original jurisdiction of this court could only have been invoked upon the ground that the right claimed by complainant, and of which he charges defendants are about to deprive him, is one granted to him by the Constitution or laws of the United States or under subdivision 4, § 629, Rev. St. [U. S. Comp. St. 1901, p. 503]. This last section is as follows:

"Fourth. Of all suits at law or in equity arising under any act providing for revenue from imports or tonnage, except * * *; of all causes arising under any law providing internal revenue, and of all causes arising under the postal laws."

The beginning of the section is, "The Circuit Court shall have jurisdiction as follows."

It will thus be seen that there is nothing in that section which seeks to confer upon the courts of the United States exclusive jurisdiction. But as the right claimed by the complainant in his bill is one arising under the Constitution and laws of the United States, and the amount involved exceeds in value the sum of $2,000, exclusive of interest and costs, this court would clearly have original jurisdiction under the judiciary act of March 3, 1887, c. 373, 24 Stat. 553, as corrected by the act of August 13, 1888, c. 866, 25 Stat. 434 [U. S. Comp. St. 1901, p. 509].

The right to remove the cause must also be sustained under the latter act, as there is no other act of Congress which will permit the removal of a cause of this nature from a state court to this court. Although, as shown above, subdivision 4 of section 629, Rev. St., includes causes arising under any act of Congress providing for revenue from imports and tonnage, internal revenue and under the postal laws, section 643, Rev. St. [U. S. Comp. St. 1901, p. 521], only authorizes the removal of causes commenced against any officer appointed by or acting under authority of any revenue law of the United States, and does not include actions against officers acting under the postal laws. Whether this was a mere oversight on the part of Congress or intentional is immaterial, so far as the courts are concerned, for they are powerless to remedy the omissions of Congress.

It was also contended on behalf of the defense that, in view of the fact that actions of this nature are an interference with the proper discharge of the duties imposed upon one of the executive departments of the national government in pursuance of the Constitution, the wheels of the government may be stopped by improper injunctions granted by state courts all over the country, if permitted. It would be a sufficient answer to this contention that there is no reason to presume that the courts of the states will pervert the laws of the nation any more than would the national courts, and that Congress is of that opinion is conclusively evidenced by the fact that it has not seen proper to deprive the state courts of that jurisdiction by conferring exclusive jurisdiction on the courts of its own creation in cases of this nature, or even cases arising under the revenue laws. The reports of the Supreme Court of the United States are full of cases which were originally instituted against collectors of customs and internal revenue in the state courts and removed to the national courts, and in none of them has that high tribunal ever held that the state court in which the suit was originally instituted was without jurisdiction. In view of the well-known fact that the courts of the United States, including the Supreme Court, will raise jurisdictional questions of their own motion, as was evidenced in Minnesota v. Northern Securities Company, 194 U. S. 48, 24 Sup. Ct. 598, 48 L. Ed. 870, and Cochran v. Montgomery County, 199 U. S. 260, 26 Sup. Ct. 58, 50 L. Ed. 182, it is hardly reasonable to suppose that so important a question would have been overlooked. In the very important cases of De Lima v. Bidwell, 182 U. S. 1, 21 Sup. Ct. 743, 45 L. Ed. 1041, and Downes v. Bidwell, 182 U. S. 244, 21 Sup. Ct. 770, 45 L. Ed. 1088, which were actions arising under

the revenue laws of Congress against the collector of customs, the suits were originally instituted in the state courts and removed, under the provisions of section 643, Rev. St., to the national court.

From what has been said it follows as of course that the demurrer of defendants challenging the jurisdiction of the state court must be overruled, and as the bill of complaint on its face shows that complainant claims some right granted to him by the Constitution and laws of the United States and the value of the matter in controversy exceeds $2,000, the motion to remand the cause to the state court must also be overruled. New Orleans National Bank v. Merchant (C. C.). 18 Fed. 841.