Marshall, C. J.
 

 This suit was filed in this court, invoking the original jurisdiction of the court, praying a writ of prohibition to prohibit the defendants from trying a cause pending in the court of common pleas of Stark county, Ohio. The petition recites that Popovici is a vice consul for the kingdom of Roumania, duly accredited by the government of the kingdom of Roumania to the government of the United States, and recognized and accepted by the government of the United States as such vice consul, and that he is stationed by the Roumanian lega
 
 *485
 
 tion at Cleveland, Ohio, where he now resides and represents said Roumanian government as vice consul. It further recites that he is an alien and a citizen of the kingdom of Roumania.
 

 It is further recited that on May 26, 1927, Helen Popovici, his wife, filed a suit in the common pleas court of Stark county, Ohio, praying divorce and alimony. Relator, as defendant in that cause, objected to the jurisdiction of the court, but the court overruled the objection and made an order for temporary alimony, and, according to the allegations of the petition, will, unless restrained by this court, enforce that order by contempt proceedings, with possible restraint of his liberty. Though it was not alleged in the petition, it was conceded as a fact during the argument of this cause that Helen Popovici was at the time of the marriage a resident of Stark county, Ohio, and that the marriage was contracted and consummated in Canton, Stark county, and that the marriage therefore acquired a legal domicile in that county. The proceedings were regular in all respects and, except for the official position of relator as a vice consul, no question would arise.
 

 Relator claims the protection of Section 2 of Article III of the Constitution of the United States, which provides, in part, as follows:
 

 “The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority:— to all Cases affecting Ambassadors, other public Ministers and Consuls. * * *
 

 “In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which
 
 *486
 
 State shall he Party, the Supreme Court shall have original Jurisdiction. In all the other Cases before mentioned, the Supreme. Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.”
 

 These are the only provisions found in the Federal Constitution having any bearing upon this subject.
 

 He also invokes the aid of paragraph 8 of Section 256 of the United States Judicial Code (Title 28, Section 371, U. S. Code, Section 1233, U. S. Comp. Stats, of 1918), as amended March 3, 1911, as follows :
 

 “The jurisdiction vested in the courts' of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several states. * * *
 

 “Eighth. Of all suits and proceedings against ambassadors, or other public ministers, or their domestics, or domestic servants, or against consuls or vice consuls.”
 

 In any ordinary action against the accredited representatives of a foreign government, relating to causes over which federal courts have well-recognized jurisdiction, and where they are in fact exercising such jurisdiction, it is not doubted that Section 256 of the Judicial Code, or any other enactment on that subject which Congress has the constitutional authority to enact, would be controlling, and entirely exclude jurisdiction of the state courts. It may be doubted whether Congress would have the power to confer upon the federal courts exclusive jurisdiction, or any jurisdiction, over causes in
 
 *487
 
 which the domestic relations are involved. It has been definitely and repeatedly decided by the federal courts that under existing legislation those courts may not entertain jurisdiction over causes affecting the domestic relations. The earliest declaration upon that subject is found in
 
 Barber
 
 v.
 
 Barber,
 
 62 U. S. (21 How.), 582, 16 L. Ed., 226:
 

 “This court disclaims altogether any jurisdiction in the courts of the United States upon the subject of divorce or for the allowance of alimony, either as an original proceeding in chancery, or as an incident to a divorce
 
 a vinculo,
 
 or to one from bed and board.”
 

 That case was decided in 1858. There was a divided court, but the members of the court at that time differed only upon the grounds of rejecting the jurisdiction, they being unanimously of the opinion that jurisdiction could not be entertained of that class of cases. In 1882 the Circuit Court of the Southern District of New York, in
 
 Johnson
 
 v.
 
 Johnson,
 
 13 F., 193, remanded of its own motion a divorce case which had been removed to that court from the state court. The Circuit Court of the Northern District of Illinois took similar action in the case of
 
 Bowman
 
 v.
 
 Bowman,
 
 30 F., 849. The same doctrine was applied in the case of
 
 In re Burrus,
 
 136 U. S., 586, 10 S. Ct., 850, 34 L. Ed., 500, in which a writ of habeas corpus was applied for to restore a son to the custody of his father, unlawfully detained by his grandparents. Mr. Justice Miller declared in the opinion (136 U. S., at page 593, 10 S. Ct., 853):
 

 “The whole subject of the domestic relations of husband and wife, parent and child, belongs to the
 
 *488
 
 laws of the states and not to the laws of the United States.”
 

 In
 
 Simms
 
 v.
 
 Simms,
 
 175 U. S., 162, 20 S. Ct., 58, 44 L. Ed., 115, the court had under consideration an appeal from a decree of the Supreme Court of the territory of Arizona. While the court in that case entertained jurisdiction of an appeal from the territorial court, Mr. Justice Cray, in the opinion (175 U. S., at page 167, 20 S. Ct., 60), made the following observation:
 

 “In support of the motion to dismiss this appeal because the decree below concerned divorce and alimony only, the appellee relied on
 
 Barber
 
 v.
 
 Barber,
 
 21 How., 582 [16 L. Ed., 226]. - In that case, a majority of this court held that a wife who had obtained against her husband, in the courts of the state of their domicile, a decree, divorcing them from bed and board and awarding alimony to her, might sue the husband for such alimony in a Circuit Court of the United States held in a state in which he had since become domiciled. Mr. Justice Wayne, in delivering judgment, said: ‘We disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery, or as an incident to a divorce
 
 a vinculo,
 
 or to one from bed and board.’ 21 How., 584 [16 L. Ed., 226]. And from that proposition there was no dissent. It may therefore be assumed as indubitable that the Circuit Courts of the United States have no jurisdiction, either of suits for divorce, or of claims for alimony, whether made in a suit for divorce, or by an original proceeding in equity, before a decree for such alimony in a state
 
 *489
 
 court. Within the states of the Union, the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the state, and not to the laws of the United States.
 
 In re Burrus,
 
 136 U. S., 586, 593, 594 [10 S. Ct., 850, 34 L. Ed., 500].”
 

 In
 
 De la Rama
 
 v.
 
 De la Rama,
 
 201 U. S., 303, 26 S. Ct., 485, 50 L. Ed., 765, a similar declaration was made by Mr. Justice Brown, at page 307 of the opinion in 201 U. S. (26 S. Ct., 486).
 

 If any further citation of authority is necessary to be shown to establish the principle that the federal courts will not entertain jurisdiction of divorce and alimony cases, that authority may be found in the experience of Helen Popovici. She brought her action in the District Court of the United States for the Northern District of Ohio, and a motion to dismiss was filed by relator in this case, and after full consideration, and rendering an elaborate opinion
 
 [Popovici
 
 v.
 
 Popovici,
 
 30 F. (2d), 185], the court dismissed the petition on the ground that it had no jurisdiction over an action for divorce and alimony. It would seem, therefore, that if the state courts cannot entertain jurisdiction of this cause Mrs. Popovici has one of two alternatives, either to continue to occupy the status of a deserted wife, with the attendant obligation of rearing, supporting, and educating her infant child, or to go to Eoumania and invoke the jurisdiction of the courts of that kingdom to obtain a legal separation, and support for herself and child. The Federal Constitution did not definitely and in terms give to the federal courts exclusive jurisdiction over all controversies in which a foreign representative is a party. It provided
 
 *490
 
 that the jurisdiction of the federal courts should extend to such causes, and further that the Supreme Court of the United States should have original jurisdiction. In neither event was it declared to be exclusive.
 

 . It was left to Congress to determine to what extent the jurisdiction should be made exclusive, and, acting upon the authority given, Congress in the Judiciary Act of September 24,1789 (1 Stats, at L., 73), gave to the District Courts of the United States exclusive jurisdiction of all suits against consuls, except in certain instances with which we are not now concerned. In
 
 Davis
 
 v.
 
 Packard,
 
 7 Pet. (32 U. S.), 276, 8 L. Ed., 684, it was held that that portion of the act was constitutional. The law remained unchanged until the Act of February 18, 1875 (18 Stats, at L., 470), whereby that portion of the earlier act was repealed, and for 37 years there was no statutory provision which in terms made the jurisdiction of the courts of the United States exclusive of the state courts in suits against consuls or vice consuls. The Act of March 3,1911 (Title 28, Section 1
 
 et seq.,
 
 U. S. Code), again restored the exclusive jurisdiction of the District Courts of all civil cases against consuls. Since March 3, 1911, it is unquestioned that the jurisdiction of the federal courts is exclusive of the jurisdiction of state courts in all causes affecting consuls, in so far as the federal courts themselves have jurisdiction over the subject-matter of the controversies.
 

 Our sole inquiry in the instant case is whether the state courts are excluded from jurisdiction over those controversies affecting ambassadors, other public ministers and consuls, where the federal
 
 *491
 
 courts disclaim jurisdiction entirely. It is at least significant that Congress, having the right to assert exclusive jurisdiction in the federal courts, did not exercise that right for a period of 37 years. It is equally significant that Congress has not at any time, established a special court, or given jurisdiction to the District Courts over causes involving domestic relations affecting foreign ministers and consuls. Whether this omission has been due to a willingness to leave all matters affecting the domestic relations to the state courts, or whether the omission is for the reason that such jurisdiction would be an unconstitutional usurpation of power, we. need not at this time inquire. It is sufficient to say that at this time Mrs. Popovici is wholly without redress, unless her cause can be heard and decided by the courts of this state. The constitutional provision had its origin in the law of nations, and, while its wisdom is undoubted, there must necessarily be some limitations upon its application. That there are certain well-defined limitations and exceptions is fully established by the authorities. Unfortunately no cause has ever come before the federal courts involving the right of a state court to hear and decide a suit for divorce and alimony affecting a foreign consul.
 

 In the instant case it must be borne in mind that an alien took up his abode in the city of Canton, contracted marriage with a resident of Ohio, with the incidental obligations which that marriage involved, including support of wife and support, maintenance, and- education of a child. The wife and child are not only the beneficiaries of those obligations, but by reason of the breach of the marriage contract the
 
 *492
 
 wife is entitled to the restoration of her former status, so far as lies in the power of the courts to grant. The relator, having invoked the laws of Ohio to contract a valid marriage, should not lightly be heard to deny the right of the other party to the contract to invoke the remedial laws of the same state to compel the performance of the obligations of that contract. If relator is entitled to immunity from a divorce suit in the state courts, the privilege is one which belongs to his home government, and is one which he cannot waive, and, even though he should neglect to assert it in the first instance, he would not be estopped from asserting it at any time before the litigation is ended.
 

 We are of the opinion, however, that there is no such immunity in this character of controversy. The immunity exists, if at all, only by virtue of the constitutional provision and the acts of Congress relating thereto. The United States Supreme Court, in
 
 Plaquemines Tropical Fruit Co.
 
 v.
 
 Henderson,
 
 170 U. S., 511, 18 S. Ct., 685, 42 L. Ed., 1126, referring to this constitutional provision, has said (170 U. S., at page 517, 18 S. Ct., 688):
 

 “It cannot be doubted that each of the original states had, prior to the adoption of the Constitution, complete and exclusive jurisdiction by its judicial tribunals over all legal questions, of whatsoever nature, capable of judicial determination, and involved in any case within its limits between parties over whom it could exercise jurisdiction. * * * If it was intended to withdraw from the states authority to determine, by its courts, all cases and controversies to which the judicial power of the United States was extended, and of which jurisdiction was
 
 *493
 
 not given to the national courts exclusively, such a purpose would have been manifested by clear language. Nothing more was done by the Constitution than to extend the judicial power of the United States to specified cases and controversies; leaving to Congress to determine whether the courts to be established by it from time to time should be given exclusive cognizance of such cases or controversies, or should only exercise jurisdiction concurrent with the courts of the several states.”
 

 The language of paragraph 8 of Section 256 of the United States Judicial Code is clear, and yet it must be said that Congress has not by that very clear language clearly manifested the legislative intent. The general intent of Congress upon this entire subject is manifested by what is done and omitted, rather than by what is said. By its omission to make any provision for the trial of divorce and alimony suits against foreign consuls in the federal courts, it has manifested an intent and purpose to leave such controversies to the courts of the states.
 

 The writ must be denied.
 

 Writ denied.
 

 Day, Allen, Kinkade, Robinson, Jones and Matthias, JJ., concur.