Whitaker, Judge,
delivered the opinion of the court:
The plaintiff sues for the value of improvements on a tract of land which he leased, under an instrument designated as a license, from the Panama Canal on March 21, 1923. The license was cancelled on November 30, 1939, under a provision thereof, which reads as follows:
The licensee agrees that if at any time it shall become necessary for the United States to occupy the whole or any portion of the land covered by this license, it shall have the right to enter upon and take possession of said land without further compensation to the licensee than the reasonable value of the improvements made by the licensee upon the said tract, the said value to be determined in such manner as the Governor of the Panama Canal may direct.
However, section 1308 of Title 48 of U. S. C., which is part of the Act of February 27, 1909, c. 224, secs. 1, 2, 3, and 5 (35 Stat. 658) provides:
* _ * * all. leases shall be made subject to the provision that if at any time it shall become necessary, notwithstanding, for the United States to occupy or use any portion of the leased lands, it shall have the right to so do without further compensation to the lessee than for the reasonable value of the necessary improvements made upon said tracts by the lessee, the same to be determined by the courts of the Canal Zone.
The license executed provided for determination of the value of the improvements “as the Governor of the Panama Canal may direct”; the Act authorizing the license provided for the determination of this value “by the courts of the Canal Zone.”
The parties are conclusively presumed to have known of the provisions of the Act, and they are not presumed to have entered into a contract contrary to its terms. If possible, the contract must be construed to have been entered into in con *292 formity with, the Act. It can be so construed, and so construed it provides that, in the first instance, the value is to be determined “in such manner as the Governor of the Panama Canal may direct,” but if the parties cannot agree on this value, then it is to be determined “by the courts of the Canal Zone.”
When the Governor took possession of the land he determined that the value of the improvements was $818.00. Plaintiff says that this determination was grossly erroneous, and that the improvements were in fact worth $12,562.89. He refused to accept the sum offered, but the Governor did not then refer the matter to the courts as he was required to do, and he has never paid nor tendered the reasonable value, determined in the prescribed manner. Plaintiff, therefore, brings this suit to recover what he claims is the true value.
The defendant has filed a plea to the jurisdiction of this court on the ground that only the courts of the Canal Zone have the right to determine the value of the improvements and, hence, that this court has no jurisdiction of this suit.
Upon repossession of the lands, an obligation was cast on the Governor to pay the “reasonable value” of the improvements. This obligation has not been discharged, nor has the Governor made a tender of this “reasonable value.” He did tender an amount which he said was the value of the improvements, but he has never tendered nor offered to pay the value fixed by the contract. That value was the reasonable value as determined by the courts of the Canal Zone. That value has never been determined and, hence, there could have been no offer to pay it.
The defendant’s obligation to pay has never been discharged. It could not be discharged until the value was determined. The determination of the value was the first step toward the discharge of the defendant’s obligation. It has never taken this step. It has not discharged the obligation the contract imposed upon it, and, hence, the plaintiff has a right of action in this court, under section 145 of the Judicial Code, to enforce this obligation to pay “the reasonable value” of the improvements.
Nor does the provision of section 1308 of Title 48 of the U. S. Code for the determination of this value by the courts *293 of the Canal Zone take away jurisdiction from this court to render judgment for defendant’s breach of contract to pay the value of the improvements. It was the obligation of the defendant to submit the question of the reasonable value to the courts of the Canal Zone as a preliminary to the discharge of its obligation to pay the reasonable value as thus determined. It is for this breach of defendant’s obligation to pay this value that plaintiff sues. No jurisdiction was expressly conferred on the courts of the Canal Zone to entertain a suit by the plaintiff to recover for breach of the contract to pay this reasonable value. The Act merely provided that the reasonable value was to be determined by the courts of the Canal Zone. Upon this determination the contract required the Governor to pay the value thus determined, but if he failed or refused to pay, it was not provided that the plaintiff might bring suit in the courts of the Canal Zone for this breach of contract. But it is plain that this court has such jurisdiction.
The situation is analogous to proceedings by the United States to acquire lands. If the land owner refuses to accept a sum offered, the United States must institute suit in a District Court to condemn the land. But if the Government takes the lands, without having instituted condemnation proceedings, under a promise, express or implied, to pay for the lands, and if it fails to discharge this obligation, the land owner must sue in a court of claims.
So it is here. As the first step toward the discharge of its obligation to pay the reasonable value of the improvements, the Governor was required to submit to the courts of the Canal Zone the question of the reasonable value. But if he failed or refused to do this, the plaintiff’s remedy would seem to be in a court of claims for breach of contract.
But if an intention can be found in the Act to confer on the courts of the Canal Zone jurisdiction of a suit by plaintiff for breach of contract, we certainly do not think that it was intended to make this jurisdiction exclusive. It can hardly be said that when jurisdiction to render a judgment against the United States is only impliedly conferred, if at all, on a special court of limited jurisdiction, not having general jurisdiction of suits against the United States, that it *294 was intended to take away jurisdiction' from that court especially created by Congress to hear and- determine suits against the sovereign.
When the United States first consented to be sued generally, jurisdiction was not conferred on United States courts in general, but on a special tribunal created to hear and determine such suits. For thirty years it was the consistent policy of Congress to lodge jurisdiction of suits against the United ^ States exclusively in this court. In 1887 the Tucker Act conferred on the District Courts, sitting as courts of claims, concurrent jurisdiction of suits in which the amount involved was small. But of suits of larger amounts exclusive jurisdiction remains in this court. Even of suits of smaller amounts it has,concurrent jurisdiction. It remains the special tribunal for the trial of suits against the United States, that tribunal in which the sovereign was willing to consent that it be sued.
Such having been the long-standing policy of Congress, an intention to depart therefrom and to exclude jurisdiction in this court must be evidenced expressly or by necessary implication. We find no such intention expressed nor implied in the Act of February 27,1909, supra.
At the time of the enactment of this Act providing for the determination of this value by the courts of the Canal Zone the only courts in existence there were courts established not by Congress, but by the Canal Commission. By the Act of April 28, 1904 (83 Stat. 429), the- President was directed to take possession of and to pay for the Panama Canal. Section 2 of this Act provided:
That until the expiration of the Fifty-eighth Congress, unless provision for the temporary government of the Canal Zone be sooner made by Congress, all the military, civil, and judicial powers as well as the power to make all rules and regulations for the government of the Canal Zone and all the rights, powers, and authority granted by the terms of said treaty to the United States shall be vested in such person or persons and shall be exercised in such manner as the President shall direct for the government of said Zone and maintaining and protecting the inhabitants thereof in the free enjoyment of their liberty, property, and religion.
*295 Pursuant to the powers granted, the President appointed the Isthmian Canal Commission and vested in it the sweeping powers granted by the Act of 1904, supra, to be exercised under the supervision of the Secretary of War.
This Commission in turn ‘^passed” “Act No. 1”: “An Act to provide for the organization of a judiciary and the exercise of judicial powers in the Canal Zone, Isthmus of Panama, and for other purposes.” This Act established municipal courts having the limited criminal and civil jurisdiction of like courts in the States; circuit courts having the original jurisdiction of courts of first instance in the States; and a Supreme Court having the jurisdiction enjoyed by the Supreme Courts in the States.
These were the “courts of the Canal Zone” referred to by Congress in the Act of February 27, 1909, supra, providing for determination of the value of the improvements by the courts of the Canal Zone. Is it to be supposed that Congress intended to give such courts, so created, jurisdiction of suits against the sovereign? There may be doubt whether such courts had the right to exercise any judicial power at all, but we are of opinion, in any event, that if Congress intended to confer on them jurisdiction of suits against the sovereign, it certainly did not intend to make that jurisdiction exclusive.
“It is a general rule,” says the Supreme Court in United States v. Bank of New York Co., 296 U. S. 463, 479, “that the grant of jurisdiction to one court does not, of itself, imply that the jurisdiction is to be exclusive. See Gittings v. Crawford, Taney’s Dec. 1; Ames v. Kansas, 111 U. S. 449, 464; Plaguemines Fruit Co. v. Henderson, 170 U. S. 511, 517, 518; Merryweather v. United States, 12 F. (2d) 407, 409, 410.” In that case it was insisted that the grant of jurisdiction to the District Courts “of all suits of a civil nature, at common law or in equity, brought by the United States * * *” was a grant of exclusive jurisdiction, but the Supreme Court held that it was not.
In Ames v. Kansas, 111 U. S. 449, 464, cited in United States v. Bank of New York Co., supra, there is a full discussion of the question whether the constitutional grant to the Supreme Court of original jurisdiction of “all cases *296 affecting ambassadors, other public ministers and consuls, and those in which a State shall be a party,” was a grant of exclusive jurisdiction. In such cases the Constitution said that “the Supreme Court shall have original jurisdiction,” but “in all the other cases before mentioned, the Supreme Court shall have appellate jurisdiction.” It was held that the grant was not exclusive.
In support of its opinion the court quoted from Chief Justice Taney’s opinion in Gittings v. Crawford, Taney’s Decisions, 1, 9, as follows:
The true rule in this case is, I think, the rule which is constantly applied to ordinary acts of legislation in which the grant of jurisdiction over a certain subject matter to one court does not, of itself, imply that that jurisdiction is to be exclusive. In the clause in question there is nothing but mere affirmative words of grant, and none that import a design to exclude the subordinate jurisdiction of other courts of the United States on the same subject matter.
Plaquemines Fruit Co. v. Henderson, also cited in United States v. Bank of New York Co., supra, was a suit by plaintiff, a foreign corporation, to quiet title to lands in Louisiana. A plea in bar was interposed alleging that the question had already been decided by the state courts of Louisiana in a suit brought by the State of Louisiana in which the plaintiff and defendant were parties. The plaintiff replied that the judgment of the state court was void because jurisdiction of controversies between a state and citizens of another state had been exclusively vested by the Constitution in the courts of the United States by the words of the Constitution, “The judicial power shall extend * * * to controversies * * * between a State and citizens of another State.”
It was held that this grant of jurisdiction was not an exclusive grant. In the course of its opinion the court quoted from Hamilton in the Federalist as follows:
The principles established in a former paper teach us that the State will retain all preexisting authorities, which may not be exclusively delegated to the Federal head; and that this exclusive delegation can only exist in one of three cases; where an exclusive authority is, *297 in express terms, granted to the Union; or where a particular authority is granted to the Union, and the exercise of a like authority is prohibited to the States; or, where an authority is granted to the Union, with which a similar authority in the States would be utterly incompatible. Though these principles may not apply with the same force to the judiciary as to the legislative power, yet I am inclined to think that they are, in the main, just with respect to the former, as well as the latter. And under this impression I shall lay it down as a rule that the state courts will retain the jurisdiction they now have, unless it appears to be taken away in one of the enumerated modes.
Mr. Justice Harlan, writing the opinion of the court, concluded :
If it was intended to withdraw from the States authority to determine, by its courts, all cases and controversies to which the judicial power of the United States was extended, and of which jurisdiction was not given to the national courts exclusively, such a purpose would have been manifested by clear language. Nothing more was done by the Constitution than to extend the judicial power of the United States to specified cases and controversies; leaving to Congress to determine whether the courts to be established by it from time to time should be given exclusive cognizance of such cases or controversies, or should only exercise jurisdiction concurrent with the courts of the several States.
*[• H*
That case [Gritting s v. Crawford], it is true, did not present any question as to the jurisdiction of the state courts, but it affirms the rule that the grant of original jurisdiction to a particular court in enumerated cases does not, of itself, import that the jurisdiction of that court is exclusive in such cases.
The principle established by these cases is that a grant of jurisdiction to one court does not deprive another court of the jurisdiction it already had, unless an intention so to do be expressed by “clear language” or by necessary implication-, or, as Hamilton expressed it, unless the retention of jurisdiction by the first tribunal be “utterly incompatible” with the grant to the second one.
Our jurisdiction to try such a case as this is clear; it was not expressly taken away by the Act of February 27, *298 1909, supra, nor is there anything in the Act from which such an intention can be implied. Certainly there is nothing incompatible in the exercise of jurisdiction by this court with the grant of jurisdiction to the courts of the Canal Zone.
The application of the principle of the cases above referred to by the courts to other Acts is not very helpful, and so we do not discuss United States v. Pfitsch, 256 U. S. 547, arising under the Lever Act; nor Venezuelan Meat Export, Ltd. v. United States, 58 C. Cls. 76; Fleet Corp. v. Rosenberg Bros., 276 U. S. 202; Johnson v. Fleet Corp., 280 U. S. 320; and Matson Navigation Co. v. United States, 284 U. S. 352, arising under the Admiralty Act; nor McBean, Admr., v. United States, 80 C. Cls. 227, arising under the War Risk Insurance Act. Suffice it to say that in those cases an intention to confer exclusive jurisdiction was much plainer than in the case at bar.
We are of opinion that defendant’s plea to the jurisdiction should be overruled. It is so ordered.
Madden, Judge, and Littleton, Judge, concur.
Jones, Judge, and Whaley, Chief Justice, took no part in the decision of this case.
In this case (No. 45473) following the above decision, general traverse was filed by the defendant July 17,1943.