WILLIAMS NATURAL GAS COMPANY, Williams Pipe Line Company and Williams Telecom Group, Petitioners,

v.

The STATE BOARD OF EQUALIZATION and the Oklahoma Tax Commission, Respondents.

No. 84097.

Supreme Court of Oklahoma.

Dec. 20, 1994.

Rehearing Denied March 7, 1995.

Hall, Estill, Hardwick, Gable, Golden & Nelson by Graydon Dean Luthey, Jr. and Kenneth L. Hunt, and William G. von Glahn, Associate Gen. Counsel, The Williams Companies, Tulsa, for petitioners.

Susan Brimer Loving, Atty. Gen. and Douglas F. Price, Asst. Atty. Gen., Oklahoma

City, for respondent State Bd. of Equalization.

David Allen Miley, Asst. Gen. Counsel, Oklahoma Tax Com'n, Oklahoma City, for respondent Oklahoma Tax Com'n.

Stipe Law Firm by Gene Stipe, and J. Rick Faling, and Stuart Strasner, Oklahoma City, for intervenors Oklahoma State School Bd. Ass'n and Ass'n of County Com'rs of Oklahoma.

McKenzie, Moffett, Elias & Books by William K. Elias, Oklahoma City, for intervenors ANR Pipeline Co., Colorado Interstate Gas Co., El Paso Natural Gas Co., Transwestern Pipeline Co., Enron Oil & Gas Marketing, Black Marlin Pipeline Co., Explorer Pipeline Co., Aquila Gas Systems, Inc., Sun Pipeline Co., Mid–Continent Pipe Line Co., Northern Natural Gas Co., Natural Gas Pipeline Co. of North America, Western Gas Resources, Inc.

Gable & Gotwals by Oliver S. Howard, and Teresa D. Adwan, Tulsa, Additional Counsel for intervenors ANR Pipeline Co. and Colorado Interstate Gas Co.

Cleeta John Rogers, Gen. Counsel, and Jon D. Sellers, Oklahoma City Public Schools, Oklahoma City, for intervenors Independent School Dist. No. 89 of Oklahoma County, Okl.

Doerner, Stuart, Saunders, Daniel, Anderson & Biolchini by John B. Turner, and Rebecca M. Fowler, Tulsa, for intervenor Public Service Co. of Oklahoma.

HODGES, Chief Justice.

Three public service corporations, Williams Natural Gas Company, Williams Pipe Line Company, and Williams Telecom Group (Williams Companies) ask this Court to assume original jurisdiction. They request a writ prohibiting the State Board of Equalization (Board) from assessing their public service property at a greater ratio than that applied to public service property owned by railroads and airlines. Original jurisdiction is assumed and the petition for a writ of prohibition is denied.

The Williams Companies assert that the assessment of their property at a ratio higher than that used to assess railroad and airline property is unlawfully discriminatory. They have challenged the Board's assessment in the Court of Tax Review. There are seventy to ninety other challenges pending in that court. All were brought by public service corporations seeking to have their assessment ratio lowered to the ratio applied to railroad and airline companies.

The Board has responded through the Attorney General to the Williams Companies' application to this Court to assume original jurisdiction. The Oklahoma Tax Commission has adopted that response. Motions to intervene have been granted to the State School Board Association, the Association of County Commissioners, several pipeline companies with cases pending before the Court of Tax Review, the Oklahoma City Public Schools, and Public Service Company of Oklahoma. Oral arguments were heard on this matter on October 19, 1994.

ORIGINAL JURISDICTION

 The Williams Companies, the Board, the School Board Association, and the Oklahoma City Schools ask this Court to assume original jurisdiction on the basis of *publici juris*. They point to the many other challenges pending in the Court of Tax Review which raise the issues presented by this original action. They urge resolution of the "pure questions of law" raised in this action which must ultimately be determined by this Court. Further, they point out that if the matter is not resolved before April 1, 1995, when the ad valorem taxes are due, the taxes will be paid under protest. Those funds will then be placed in an escrow account and will be unavailable to schools and county governments.

Every recipient of ad valorem tax revenue is potentially impacted by this action. These include common schools (K–12), vocational technical education, county government, county health departments, emergency medical service districts, solid waste management districts, county and city/county libraries, and cities (sinking funds only). The projected revenue shortfall for these institutions is $63.8 million. This represents 6.8% of total property tax revenue.

This Court has assumed original jurisdiction pursuant to the doctrine of *publici juris* to address ad valorem tax issues emanating from the Board. *See State ex rel. Poulos v. State Bd. of Equalization,* 646 P.2d 1269 (1982); *State ex rel. Poulos v. State Bd. of Equalization,* 552 P.2d 1134 (1975). The public importance of the issues presented by this action are heightened by the adverse impact on school districts and county government if the controversy is not rapidly resolved. In addition, judicial economy will be served by today's resolution of the central issues in numerous ad valorem tax protests. Original jurisdiction is therefore assumed to address the issues raised by the Williams Companies.

## BACKGROUND

In Oklahoma's Ad Valorem Tax Code, the Legislature has listed three classes of property: 1) real property; 2) personal property; and 3) public service corporation property. Okla.Stat. tit. 68, § 2803(A) (1991). Real and personal property are assessed locally by county officials. The Board, however, is "responsible for valuation of railroad, airline and public service corporation property and the adjustment and equalization of all property values both centrally and locally assessed." *Id.* at § 2802(26). The Board assesses ad valorem taxes on public service corporations by 1) establishing a fair cash value for property and 2) fixing an assessment percentage for property. The second step is challenged in this action.

During the 1960s and 1970s, Congress became concerned about the number of failing railroads. *See Chrysler Rail Transp. Corp. v. Holt,* 845 F.Supp. 463, 465 (W.D.Mich. 1994). Congress found that the states had been forcing railroads to carry more than their share of the tax burden. To prevent discriminatory taxation of railroad property by the states, Congress enacted the Railroad Revitalization and Regulatory Reform Act of 1976 (4–R Act), 49 U.S.C. § 11503 (1988). The Act provides in part:

The following acts *unreasonably burden and discriminate against interstate commerce,* and a State, subdivision of a State,

or authority acting for a State or subdivision may not do any of them:

(1) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value other commercial and industrial property has to the true market value of the other commercial and industrial property.

(2) levy or collect a tax on an assessment that may not be made under clause (1) of this subsection.

(3) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

*Id.* at § 11503(b) (emphasis added).

Tax discrimination against airline property which burdens interstate commerce was similarly remedied under provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), 49 U.S.C.App. § 1513 (1988). That Act provides in part:

(1) The following acts unreasonably burden and discriminate against interstate commerce and a State ... may not do any of them:

. . . .

(C) levy or collect an ad valorem property tax on air carrier transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

*Id.* at § 1513(d)(1)(C).

In response to these federal acts, the Oklahoma Legislature enacted section 2864(C) of title 68. That section provides that "[i]n determining the assessment ratio for all air carrier property and all railroad property, the State Board shall only consider the ratio of the aggregate assessed value of the fair cash value of the locally assessed commercial/industrial real property of the state."

In June of this year, the Board adopted an assessment ratio of 12.08% for airline and railroad property. In July, the Board adopted a ratio of 22.85% for the Williams

Companies and other public service corporations.

The Williams Companies claim the assessments 1) violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 2) violate article X, section 5 of the Oklahoma Constitution which requires uniform taxation within a tax class, and 3) violate sections 2803(C) and 2847 of the Ad Valorem Tax Code, Okla.Stat. tit. 68, §§ 2801–2899 (1991), which require uniform treatment in ad valorem taxation.

## EQUAL PROTECTION

■ The Williams Companies assert that the Board's assessments violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because their property subjects them to a higher assessment percentage than the assessment percentage applied to the property of airlines and railroads. Thus, they argue, their property has been subjected to discriminatory treatment. The Board responds that the Legislature has created a subclass of property for ad valorem taxation purposes of public service corporations, the railroad and airline companies, in response to the federal legislation.

The Equal Protection Clause of the Fourteenth Amendment requires that no state "deny to any person within its jurisdiction the equal protection of the laws." State legislatures are given "especially broad latitude in creating classifications and distinctions in tax statutes." *Regan v. Washington,* 461 U.S. 540, 547, 103 S.Ct. 1997, 2002, 76 L.Ed.2d 129 (1983). Unless a classification "jeopardizes exercise of a fundamental right" or it "characterizes based upon an inherently suspect characteristic," the Equal Protection Clause requires only that the classification "rationally further a legitimate state interest." *Nordlinger v. Hahn,* — U.S. —, —, 112 S.Ct. 2326, 2332, 120 L.Ed.2d 1 (1992) (citing *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439–441, 105 S.Ct. 3249, 3254–3255, 87 L.Ed.2d 313 (1985); *New Orleans v. Duke,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–2517, 49 L.Ed.2d 511 (1976)). "This standard is especially deferential in the context of classifications made by complex tax laws." *Id.*

The present controversy, however, raises the threshold issue of whether a classification has occurred. If the Legislature has made railroads and airlines a subclass of public service corporations, that is permissible provided that "the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary." *Id.* If, on the other hand, the Legislature has left the Williams Companies and other public service corporations within the same tax class, the difference in the assessment percentages cannot withstand scrutiny under the Equal Protection Clause. *See, e.g., Allegheny Pittsburgh Coal Co. v. Webster County,* 488 U.S. 336, 345, 109 S.Ct. 633, 638–639, 102 L.Ed.2d 688 (1989) ("The equal protection clause . . . protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class." *Hillsborough v. Cromwell,* 326 U.S. 620, 623, 66 S.Ct. 445, 448, 90 L.Ed. 358 (1946)).

The Williams Companies argue that the Legislature has not created a separate tax class or subclass for railroads and airlines because it did not amend section 2803. That section lists only three ad valorem tax classes. However, it is the intent of the Legislature to create a tax class that controls rather than the statutory format it chooses.

Section 2864(C) provides a different taxing method for a clearly defined subclass of public service corporations, the railroads and airlines. No longer are other public service corporations of the same class. They are outside the protection afforded by Congress and are no longer similarly situated to airlines and railroads. The fact that the Legislature chose to include the provision in section 2864 rather than section 2803 does not change that. Just as the Legislature made public service corporation property a subset of the larger set of commercial and industrial property, it made railroad and airline property a subset of public service corporation property.

The Legislature was required to recognize the supremacy of federal law. It responded by creating a subclass for railroads and air-

lines. This is not a situation where federal law has preempted a state statute due to a conflict. The Oklahoma Legislature responded to the federal act by amending the ad valorem tax scheme so that it would not conflict with federal law.

There is nothing arbitrary or irrational in that classification. It is limited to those protected by the federal acts. The Legislature's method of creating the class was consistent with the "large leeway" states are given "in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1973).

The classification furthers a legitimate state interest. The Legislature enacted section 2864(C) to bring Oklahoma's ad valorem taxing scheme into compliance with federal laws which gave special protection to railroads and airlines. Compliance with federal law achieved by legislative creation of a tax subclass does not violate the Equal Protection Clause.

The parties have cited four state court decisions which have addressed equal protection and uniformity of taxation issues in this context. The Williams Companies rely upon *Northern Natural Gas Co. v. State Board of Equalization and Assessment,* 232 Neb. 806, 443 N.W.2d 249 (1989) *cert. denied,* 493 U.S. 1078, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990). There, a pipeline company sought to have its property assessment equalized with railroads. On appeal from the State Board of Equalization and Assessment the Supreme Court of Nebraska found the decision denied equal protection to the pipeline company. It held:

> The State Board of Equalization and Assessment, by not taxing the personal property of certain property in a class, although acting involuntarily and under compulsion of federal law, nevertheless, by complying with that mandate, has denied another taxpayer *in that same class* the equal protection of the law contrary to the 14th amendment to the Constitution of the United States.

*Id.* 443 N.W.2d at 251 (Syllabus by the Court n. 8) (emphasis added).

The key distinction between the facts of that case and the present one is that the Nebraska Board treated taxpayers of the same class differently. The Nebraska Constitution requires that "[t]axes shall be levied by valuation uniformly and proportionately upon all tangible property...." Neb. Const. art. VIII, § 1. Essentially, the Nebraska taxing scheme treats *all* tangible property as being within the same class unless certain property, such as motor vehicles and agricultural land, has been exempted. Thus, when a federal court enjoined the state of Nebraska from assessing the personal property of railroads, the result was that the assessments upon others within the class became disproportionately higher. 443 N.W.2d at 256.

When the Nebraska Supreme Court ordered that pipelines be given the same exemption as railroads, it created a revenue crisis. The Nebraska Legislature responded by making the personal property of railroads "a separate and distinct class of property and exempt[ed] the class from property taxation...." *See* Neb.Rev.Stat. § 77–202.47(4) (1990).

Oklahoma enjoys a different system of taxation. Our Constitution permits the Legislature to establish different tax classes in which property can be valued differently. *See* Okla. Const. art. X § 22. Airlines and railroads are in a legislatively created subclass of public service corporation property. This factual distinction brings this case under the persuasive authority of cases cited by the Oklahoma Board. *See In re ANR Pipeline Co.,* 254 Kan. 534, 866 P.2d 1060 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 296, 130 L.Ed.2d 209 (1994). *See also State v. Colonial Pipeline Co.,* 471 So.2d 408 (Ala.Civ. App.1984); *Federal Express Corp. v. Tennessee State Board of Equalization,* 717 S.W.2d 873 (Tenn.1986). Those cases held that legislative tax classifications of railroads and airlines on one hand and other entities on the other hand, did not violate the Equal Protection Clause.

Specifically, the Kansas Supreme Court in *ANR* rejected a pipeline's request to have its real property assessed on the same basis as

railroad property. In doing so, that court held that taxing railroad property differently from pipeline property did not violate either the Equal Protection Clause or the equal taxation provision of the Kansas Constitution.

The *ANR* court refused to follow the Nebraska decision noting that "[t]he Nebraska Constitution does not have property classifications." 866 P.2d at 1067. It observed that, unlike the Nebraska tax scheme, the Kansas Constitution "classifies all real and personal property and fixes the assessment rate for each subclass." *Id.* at 1066. A 1992 amendment to the Kansas Constitution made railroad real property an exception to the public utility subclass to which it belonged. *Id.* at 1066–1067. The *ANR* court held that the challenged assessments did not violate the Kansas or United States Constitutions.

Oklahoma's tax scheme is similar to that of Kansas in that railroad property ·has been separately classified for different tax treatment. While the Kansas classification is found in its constitution, the Oklahoma classification is statutory pursuant to the express power to classify granted to the Oklahoma Legislature.

Finally, the Williams Companies' equal protection challenge to Oklahoma's Ad Valorem Tax Code constitutes an indirect attack on the validity of the 4–R Act and TEFRA. It should be noted that the constitutionality of the 4–R Act has been upheld in federal courts. *See Arizona v. Atchison T. & S.F.R.,* 656 F.2d 398 (9th Cir.1981); *Louisville & N.R. v. Louisiana Tax Comm'n,* 498 F.Supp. 418, 421 (D.La.1980); *Tennessee v. Louisville & N.R.,* 478 F.Supp. 199 (D.Tenn.1979), *aff'd,* 652 F.2d 59 (2d Cir.1981), *cert. denied,* 454 U.S. 834, 102 S.Ct. 135, 70 L.Ed.2d 114 (1981). No state or federal court has declared either the 4–R Act or TEFRA unconstitutional. Oklahoma's classification of railroads and airlines presents no equal protection violation.

## OKLAHOMA CONSTITUTION

■ The Williams Companies next urge that the Board's assessments violate article X, section 5 of the Oklahoma Constitution. That section requires that "[t]axes be uniform upon the same class of subjects." However; because this Court has determined that a subclass of public service corporations was created by the Legislature, the applicable provision is section 22 of article X. It provides that "[n]othing in this Constitution shall be held, or construed, to prevent the classification of property for purposes of taxation; and the valuation of different classes by different means or methods." Railroads and airlines are a distinct subclass of public service corporations whose property may, under the Oklahoma Constitution, be valued with a different assessment ratio.

## OKLAHOMA'S AD VALOREM TAX CODE

■ The Williams Companies also argue that the Board's assessments violate sections 2803(C) and 2847 of the Ad Valorem Tax Code. Section 2803(C) requires that "[c]lassification as provided by this section shall require uniform treatment of each item within a class or any subclass as provided in Article X, Section 5 of the Oklahoma Constitution." Section 2847 requires in part that the assessment ratio "shall be selected by the State Board of Equalization and, subject to the requirements of federal law, uniformly applied to calculate the taxable values of public service corporation property within the state for the applicable assessment year."

These sections are statutory requirements of uniform ad valorem taxation within a class. Again, this case does not present an intraclass disparity of treatment. The airlines and railroads are within a legislatively created tax subclass. Therefore, no conflict with these sections is presented.

The Williams Companies have failed to demonstrate a violation of equal protection or ad valorem uniformity requirements. The Petition for Writ of Prohibition is denied.

ORIGINAL JURISDICTION ASSUMED; PETITION FOR WRIT OF PROHIBITION DENIED.

SIMMS, HARGRAVE, SUMMERS and WATT, JJ., concur.

KAUGER, J., concurs in result.

LAVENDER, V.C.J., and OPALA and ALMA WILSON, JJ., dissent.

OPALA, Justice, with whom LAVENDER, V.C.J., and WILSON, J., join, dissenting.

The court holds today that the Legislature's compliance with certain federal statutes [1]—by creating a separate subclass of public service corporations [2] (comprised *only* of railroads and air carriers),[3] which *alone* qualify for a lower ad valorem assessment ratio than that afforded others (pipelines) in the same class of public service corporations—does not violate the Equal Protection Clause of the 14th Amendment, U.S. Const.[4] The court's rationale for sanctioning the dis- parity of treatment in the ad valorem tax scheme under scrutiny in this case rests on federal-law preemption. The court assumes original cognizance and denies the petitioners' [pipelines'] quest to prohibit the State Board of Equalization [State Board] from subjecting their property to an assessment ratio greater than that applied to railroad and air carrier property.[5]

I must recede from the court's pronouncement. The dispositive first-impression issue in this original proceeding is whether the federal-law mandate—that the states not discriminate against *railroads* and *air carriers* by assessing their property at a higher ratio than the assessed value of other "commercial and industrial property"—violates the anti-discrimination component of the 5th Amendment's Due Process Clause [6] by not affording the same protection to other *common carriers in interstate commerce.* If I were writing for the court today, I would (a) *hold* that the congressional acts [7] invoked by the State are fatally infirm for an impermissible under-inclusion in the preferred class of *other common carriers in interstate commerce,* (b) *conclude* that the infirm federal acts have no preemptive effect on state law,[8] (c) *examine* the contested state tax laws for conformity to state fundamental-law equality [9] and uniformity [10] standards, (d) *direct* that, upon due notice and hearings, the State Board set an across-the-board assessment ratio that would apply *alike to all* public service corporations, and (e) *enjoin* that, on the State Board's failure to do so within some reasonable period of time to be set by the court, the petitioners could discharge their ad valorem tax liability at the assessment ratio *now* applicable *solely* to railroads and air carriers. Because the solution I advance represents a sharp break with recent practice, I would (a) give prospective effect to the court's pronouncement and make it apply to this case, to like challenges presently pending before the Court of Tax Review or before any ad-

1. *See* 49 U.S.C.App. § 1513(d)(1) [Tax Equity and Fiscal Responsibility Act of 1982], *infra* note 17, and 49 U.S.C. § 11503(b) [Railroad Revitalization and Regulatory Reform Act of 1976], *infra* note 16.

2. For a statutory definition of *public service corporation,* see 68 O.S.1991 § 2808, *infra* note 43. For another definition of the term, though in a different context, see Art. 9, § 34, Okl. Const.

3. The terms of 68 O.S.1991 § 2864(C) provide:

 "In determining the assessment ratio for all *air carrier property* and all *railroad property,* the State Board shall only consider the ratio of the aggregate assessed value to the fair cash value of the locally assessed commercial/industrial real property of the state." (Emphasis added.)

4. The Equal Protection Clause of the 14th Amend., § 1, U.S. Const., commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." *Nordlinger v. Hahn,* 505 U.S. ——, —— n. 1, 112 S.Ct. 2326, 2331 n. 1, 120 L.Ed.2d 1 (1992).

5. An assessment ratio of 12.08 percent (12.08%) for public service corporation property owned by air carriers was adopted by the State Board on June 20, 1994. Then, on July 15, 1994 a 22.85 percent (22.85%) assessment ratio was ratified for property owned by the petitioners (pipelines). Taxes calculated under these ratios will be due after April 1, 1995.

6. The pertinent terms of the 5th Amend., U.S. Const., are:

 "... nor [shall any person] be deprived of life, liberty, *or property,* without due process of law ..." (Emphasis added.)

7. Railroad Revitalization and Regulatory Reform Act of 1976, *infra* note 16, and Tax Equity and Fiscal Responsibility Act of 1982, *infra* note 17.

8. For a discussion of the federal acts' non-preemptive effect, see Part IX, *infra.*

9. Art. 10, § 22, Okl. Const., *infra* note 39.

10. Art. 10, § 5, Okl. Const., *infra* note 38.

ministrative agency and to those challenges that are now in the appellate litigation process, (b) expressly reject any refund claims to be pressed by the affected entities for overpayment of taxes assessed at the impermissible ratio for any past years [11] and (c) postpone the effective date of the new assessment ratio required by my analysis until the fiscal year beginning July 1, 1996.

## I

### UNDER THE FEDERAL OUSTER–OF–JURISDICTION DOCTRINE, THIS COURT IS NOT DIVESTED OF ITS *INHERENT* AUTHORITY TO TEST THE RAILROAD REVITALIZATION AND REGULATORY REFORM ACT OF 1976 AND THE TAX EQUITY AND FISCAL RESPONSIBILITY ACT OF 1982 FOR THEIR CONFORMITY TO THE MANDATORY STANDARDS OF THE U.S. CONSTITUTION

State courts have *inherent* authority and are presumptively competent to adjudicate claims arising under the laws of the United States.[12] To exclude state courts from this adjudicative arena, Congress must *affirmatively divest (or oust)* them of their presumptively *concurrent* jurisdiction.[13] Congressional state-court ouster may be effected by (1) an explicit statutory directive, (2) *unmistakable* implication from legislative history, or (3) a *clear incompatibility* between state-court jurisdiction and federal interests.[14] *None of these indicia of ouster is present in the federal legislation we are called upon to consider in this case.*

Because my examination of the congressional acts, their legislative history and attendant jurisprudence reveals no federal ouster of state-court cognizance, I would proceed to test their validity under the applicable standards of the U.S. Constitution and hold them *fatally infirm* for the reasons stated in Parts IV, VI and VIII, *infra.*

---

11. For a discussion of the prospective effect I would give to my solution, see Part IX, *infra.*

12. *McKesson v. Div. of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 28 n. 10, 110 S.Ct. 2238, 2246 n. 10, 110 L.Ed.2d 17 (1990); *Yellow Freight, Inc. v. Donnelly,* 494 U.S. 820, 823, 110 S.Ct. 1566, 1568, 108 L.Ed.2d 834 (1990); *Tafflin v. Levitt,* 493 U.S. 455, 458–459, 110 S.Ct. 792, 795, 107 L.Ed.2d 887 (1990); *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 477–478, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981); *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 507–508, 82 S.Ct. 519, 522–523, 7 L.Ed.2d 483 (1962); *Plaquemines Tropical Fruit Co. v. Henderson,* 170 U.S. 511, 517, 18 S.Ct. 685, 688, 42 L.Ed. 1126 (1898); *Chaflin v. Houseman,* 93 U.S. 130, 136, 23 L.Ed. 833, 838 (1876); *Houston v. Moore,* 18 U.S. (5 Wheat.) 1, 25–26, 5 L.Ed. 19 (1820). The Court stated in *Howlett By and Through Howlett v. Rose,* 496 U.S. 356, 367, 110 S.Ct. 2430, 2438, 110 L.Ed.2d 332 (1990):
"Federal law is enforceable in state courts not because Congress has determined that federal courts would otherwise be burdened or that state courts might provide a more convenient forum ... but because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature. The Supremacy Clause makes those laws 'the supreme Law of the Land,' and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure."

*Testa v. Katt,* 330 U.S. 386, 393, 67 S.Ct. 810, 814, 91 L.Ed. 967 (1947), teaches that the Supremacy Clause compels a state court to exercise jurisdiction over a federal-law claim because *"the policy of the federal Act is the prevailing policy in every state."* (Emphasis supplied.) Any other result, the Court notes, "flies in the face of the fact that the States of the Union constitute a nation." *Id.,* 330 U.S. at 389, 67 S.Ct. at 812.

13. *Howlett, supra* note 12, 496 U.S. at 368 n. 15, 110 S.Ct. at 2438; *Yellow Freight, supra* note 12, 494 U.S. at 823, 110 S.Ct. at 1568; *Tafflin, supra* note 12, 493 U.S. at 459, 110 S.Ct. at 795. See in this connection *McKesson, supra* note 12, 496 U.S. at 28 n. 10, 110 S.Ct. at 2246 (" '[I]n every case in which [state courts] were not expressly excluded by the future acts of the national legislature, they will of course take cognizance of the causes to which those acts may give birth.... [T]he inference seems to be conclusive that the *state courts would have a concurrent jurisdiction in all cases arising under the laws of the union, where it was not expressly prohibited'* ). *Id.* (quoting from THE FEDERALIST No 82 at 555 (A. Hamilton) (J. Cook ed. 1961) (emphasis added).

14. *Tafflin, supra* note 12, 493 U.S. at 459, 110 S.Ct. at 795; *Chaflin, supra* note 12, 93 U.S. at 136; *Houston, supra* note 12, 5 U.S. at 68; *Gulf Offshore, supra* note 12, 453 U.S. at 478, 101 S.Ct. at 2875.

## II

## THIS COURT IS NOT OFFENDING AGAINST THE ADVERSARY FORMAT OF THE PROCEEDINGS WHEN IT USES ITS OWN REASONING IN ADDRESSING THE PROPOSITIONS VIGOROUSLY ADVANCED BY THE PETITIONERS

Whenever in an original proceeding the petitioner vigorously and articulately urges a fully briefed legal proposition, this court is free to supply its own analysis and reasoning in addressing the petitioner's argument for the relief sought.[15]

Even though the petitioners argued that the assessment ratio affecting their property is violative of the state and federal fundamental law, they did not *expressly* call for constitutional condemnation of the two *federal acts* under consideration. Their failure vigorously to press that point in support of the proposition urged does not preclude this court from applying *sua sponte* the analysis I

counsel today, which favors granting the relief petitioners seek by this original action.

## III

## THE FEDERAL AND STATE STATUTORY SCHEME

To revitalize the struggling railroad industry and to provide for "tax equity" in general, Congress enacted the Railroad Revitalization and Regulatory Reform Act of 1976 [4–R Act][16] and the Tax Equity and Fiscal Responsibility Act of 1982 [TEFRA].[17] Among other things, these two acts prohibit the states from assessing railroad and air carrier property at a level that has a higher ratio to true market worth than that borne by the assessed value of other "commercial and industrial property" in the same assessment jurisdiction. The petitioners, who as pipelines *also engage in interstate commerce, are not similarly shielded by the Congress from a higher state assessment ratio.*

Responding to the federal-law mandate, the Legislature created a subclass of railroad and air carrier property[18] and established

---

**15.** *California v. Rooney,* 483 U.S. 307, 311, 107 S.Ct. 2852, 2854, 97 L.Ed.2d 258 (1987), *reh. denied,* 483 U.S. 1056, 108 S.Ct. 30, 97 L.Ed.2d 819 (1987); *Black v. Cutter Laboratories,* 351 U.S. 292, 297, 76 S.Ct. 824, 827, 100 L.Ed. 1188 (1956), *reh. denied,* 352 U.S. 859, 77 S.Ct. 21, 1 L.Ed.2d 69 (1956); *see also Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984), *reh. denied,* 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984); *Williams v. Norris,* 25 U.S. (12 Wheat.) 117, 120, 6 L.Ed. 571 (1827).

**16.** The terms of 49 U.S.C. § 11503(b) [4–R Act] provide in pertinent part:

"The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a *State or subdivision of a State may not* do any of them:

(1) *assess rail transportation property at a value that has a higher ratio* to the true market value of the rail transportation property *than the ratio that the assessed value of other commercial and industrial property* in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

(2) levy or collect a tax on an assessment that may not be made under clause (1) of this subsection.

(3) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to com-

mercial and industrial property in the same assessment jurisdiction. * * *" (Emphasis added.)

**17.** The pertinent terms of 49 U.S.C.App. § 1513(d)(1) [TEFRA] are:

"(d) Acts which unreasonably burden and discriminate against interstate commerce; definitions

"(1) The following acts unreasonably burden and discriminate against interstate commerce and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

(A) *assess air carrier transportation property at a value that has a higher ratio to the true market value of the air carrier transportation property than the ratio that the assessed value of other commercial and industrial property of the same type in the same assessment jurisdiction has to the true market value of the other commercial and industrial property;* * * *" (Emphasis added.)

**18.** *See* 68 O.S.1991 § 2864(C), *supra* note 3; *see also* the terms of 68 O.S.1991 § 2803(A), which provide:

"A. The Legislature, pursuant to authority of Article X, Section 22 of the Oklahoma Constitution, hereby classifies the following types of property for purposes of ad valorem taxation:

1. Real property;

for that category an assessment methodology which is *different* from that imposed upon the property of other public service corporations.[19] Section 2864(C) of the Ad Valorem Tax Code provides that in determining the assessment ratio for "all air carrier ... and railroad property, the State Board shall only consider the ratio of the aggregate assessed value of the fair cash value to the locally assessed commercial/industrial real property of the state."[20] *No other public service corporations are afforded the same benefit. Based on the statutory scheme, the State Board adopted in 1994 an assessment ratio of 12.08% for air carrier and railroad property and 22.85% for the petitioners.*[21]

The petitioners seek relief from the State Board's action in assessing their property at a ratio much higher than that applied to public service corporation property of air carriers and railroads. They urge the State Board's dissimilar treatment of members of the same class violates the 14th Amendment guarantee of equal protection[22] as well as the uniformity of taxation mandate in the state fundamental law.[23] The State Board asserts that its assessment ratios are based on the Legislature's legitimate response to the mandate of the two federal statutes invoked.

## IV

### MEASURED BY THE ANTI–DISCRIMINATION COMPONENT OF THE 5TH AMENDMENT'S DUE PROCESS CLAUSE, THE TWO FEDERAL STATUTES UNDER CONSIDERATION CREATE AN IMPERMISSIBLE SUBCLASS OF *COMMON CARRIERS IN INTERSTATE COMMERCE* WHICH IS VOID FOR UNDERINCLUSIVENESS

The equal protection command of the U.S. Constitution has one clear and central meaning—*it absolutely prohibits invidious governmental discrimination.* That standard, which, under the Equal Protection Clause of the 14th Amendment,[24] has to be met by *every state, must also be obeyed by the federal government* under the command of the Due Process Clause in the 5th Amendment.[25] "Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment."[26]

Section 5 of the 14th Amendment[27] empowers Congress to enact legislation implementing the commands of that amendment. While the 14th Amendment's enforcement clause is a positive grant of power authorizing Congress to exercise its discretion in determining what statute is needed to shield

---

2. Personal property; and
3. Public service corporation property."

**19.** For a statutory definition of *public service corporation,* see 68 O.S.1991 § 2808, *infra* note 43.

**20.** For the terms of 68 O.S.1991 § 2864(C), see *supra* note 3.

**21.** *See supra* note 5.

**22.** For the terms of the Equal Protection Clause of the 14th Amend., U.S. Const., see *supra* note 4.

**23.** Art. 10, § 5, Okl. Const., *infra* note 38.

**24.** *Nordlinger, supra* note 4, 505 U.S. at ——, 112 S.Ct. at 2331; *Loving v. Virginia,* 388 U.S. 1, 10, 87 S.Ct. 1817, 1822, 18 L.Ed.2d 1010 (1967); *Hill v. Texas,* 316 U.S. 400, 405, 62 S.Ct. 1159, 1162, 86 L.Ed. 1559 (1942).

**25.** Although there is no equal protection clause in the 5th Amendment, the Court recognizes in its provisions the presence of an element of equal treatment under the law, which "stem[s] from our American ideal of fairness." *Bolling v. Sharpe,* 347 U.S. 497, 500, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954); *see also Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975); *Davis v. Passman,* 442 U.S. 228, 234, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979). The equal protection component of the 5th Amendment forbids discrimination that is "so unjustifiable as to be violative of due process." *Bolling, supra,* 347 U.S. at 499, 74 S.Ct. at 694.

**26.** *Buckley v. Valeo,* 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976).

**27.** Section 5 of the 14th Amendment gives Congress the "power to enforce, by appropriate legislation, the provisions of this article." *See Katzenbach v. Morgan,* 384 U.S. 641, 648–650, 86 S.Ct. 1717, 1722–1723, 16 L.Ed.2d 828 (1966), where the Court upheld Congress' statutory prohibition of state-imposed literacy tests because of their discriminatory effect upon illiterate minorities. There, the *Court subordinated its own con-*

equal protection guarantees, the 5th Amendment *prohibits that federal law-making body from assaulting those guarantees by the very legislation that is meant to secure them.*[28]

Economic legislation—like that in the two acts tendered for our consideration today— "that does not employ suspect classifications or impinge on fundamental rights must [generally] be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose."[29] State legislation imposing a tax on one individual but not on others of the same class *may,* on the other hand, violate the Equal Protection Clause.[30] Federal economic legislation which has a discriminatory tax impact on class members *may similarly infringe* on due process rights. Whether Congress' mandate for nondiscriminatory state tax treatment of railroads and air carriers was passed in the exercise of its powers under the Commerce Clause or under the

enforcement provisions in § 5 of the 14th Amendment, it is clear that the two federal statutes result in disparate treatment of pipelines, which, though falling within the congressionally established class of *common carriers in interstate commerce,* are denied the same shield against excessive state tax assessment ratios.[31] In sum, pipelines have been *excluded* by Congress from the *subclass* of favored common carriers who alone enjoy the palladium against burdensome taxation.[32]

When Congress singles out some members of a class for a benefit not given to others in the same class and no rational relation can be shown for the disparate treatment, an impermissible underinclusive class[33] is created which denies the excluded members equal treatment under the law. Legislative history, interpretive case law and the text of the two statutes demonstrate no rational relationship between the disparity created and some legitimate government aim to be

*trary jurisprudence to the § 5 implementing legislation.*

**28.** *Shapiro v. Thompson,* 394 U.S. 618, 630, 89 S.Ct. 1322, 1325, 22 L.Ed.2d 600 (1969) *(overruled in part on other grounds, Edelman v. Jordan,* 415 U.S. 651, 671, 94 S.Ct. 1347, 1359–1360, 39 L.Ed.2d 662 (1974)); *Graham v. Richardson,* 403 U.S. 365, 382, 91 S.Ct. 1848, 1857, 29 L.Ed.2d 534 (1971); *Mississippi University for Women v. Hogan,* 458 U.S. 718, 732–733, 102 S.Ct. 3331, 3340, 73 L.Ed.2d 1090 (1982) (citing *Katzenbach, supra* note 27); *Williams v. Rhodes,* 393 U.S. 23, 29, 89 S.Ct. 5, 9–10, 21 L.Ed.2d 24 (1968).

**29.** *Hodel v. Indiana,* 452 U.S. 314, 331, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981); *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981); *Western & Southern Life Ins. Co. v. State Board of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981); *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 461–463, 101 S.Ct. 715, 722–723, 66 L.Ed.2d 659 (1981) *reh. denied* 450 U.S. 1027, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981); *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 174–79, 101 S.Ct. 453, 459–61, 66 L.Ed.2d 368 (1980) *reh. denied* 450 U.S. 960, 101 S.Ct. 1421, 67 L.Ed.2d 385 (1981); *Kotch v. Board of River Pilot Comm'rs,* 330 U.S. 552, 564, 67 S.Ct. 910, 916, 91 L.Ed. 1093 (1947) *reh. denied* 331 U.S. 864, 67 S.Ct. 1196, 91 L.Ed. 1869 (1947); *Regan v. Taxation with Representation of Washington,* 461 U.S. 540, 547, 103 S.Ct. 1997, 2001–2002, 76 L.Ed.2d 129 (1983); *Exxon Corporation v. Eagerton,* 462 U.S. 176, 195, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497 (1983); *Eaton v. Jarvis*

*Products Corp.,* 965 F.2d 922, 929 (10th Cir. 1992).

**30.** *Hillsborough Tp. v. Cromwell,* 326 U.S. 620, 623, 66 S.Ct. 445, 448, 90 L.Ed. 358, 363 (1946); *cf. City of New Orleans v. Dukes,* 427 U.S. 297, 303–304, 96 S.Ct. 2513, 2516–2517, 49 L.Ed.2d 511 (1976) (states are given greater latitude in implementing purely economic regulations challenged as violative of the Equal Protection Clause of the 14th Amendment).

**31.** The Interstate Commerce Act, 49 U.S.C. §§ 10101 *et seq.* (1988), governs, among other things, all common and air carriers (if the latter are not statutorily included within the definition of common carrier) in interstate commerce. The terms of 49 U.S.C. § 10102(4) define a *common carrier* as "an express carrier, *a pipeline carrier, a rail carrier,* a sleeping car carrier, a motor common carrier, a water common carrier, and a household goods freight forwarder." (Emphasis added.) Though there may be some doubt whether federal legislation includes air carriers under the heading of common carrier, I refer to the term *common carrier* as all-inclusive.

**32.** See *Appeal of ANR Pipeline Co.,* 254 Kan. 534, 543, 866 P.2d 1060, 1066–1067 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 296, 130 L.Ed.2d 209 (1994), where the court notes: "The brief of the [Kansas] Department of Revenue states *pipeline companies attempted unsuccessfully to obtain like federal legislation in their favor.* The statement is not disputed." (Emphasis added.)

**33.** For a discussion of impermissibly underinclusive classifications, see *Orr v. Orr,* 440 U.S. 268, 272, 99 S.Ct. 1102, 1108, 59 L.Ed.2d 306 (1979);

achieved.[34] Congress, while favoring some common carriers, plainly omitted pipelines from the protective shield afforded by the two acts. When measured against the anti-discrimination component of the 5th Amendment, the two federal statutes in question are void for underinclusiveness. *I would so hold.*

The Supremacy Clause[35] mandates preemption of state regulation by discordant national legislation that is conformable to the U.S. Constitution.[36] Federal statutory law that would require this court to violate the equal-treatment command of the U.S. Constitution need not be obeyed as valid legislation.[37]

## V

### ABSENT PREEMPTIVE FEDERAL LEGISLATION THAT IS FREE FROM CONSTITUTIONAL INFIRMITY, ART. 10, § 5, OKL. CONST.,[38] *COMMANDS* THE INCLUSION OF ALL PUBLIC SERVICE CORPORATIONS IN THE SAME TAX CLASSIFICATION

The State Constitution authorizes the Legislature to classify property for ad valorem

taxation[39] and requires the State Board to assess uniformly all public service corporation property.[40] The Legislature has divided property that is subject to ad valorem tax into three classes—real, personal and public service corporation property[41]—and has then carved out of the latter class a subclass embracing *only* railroad and air carrier property.[42] For ad valorem taxation purposes, railroads, air carriers *and pipeline companies* are all integral members of the same taxpayer category.[43] *They must hence be treated alike.*

Because I believe the federal legislation in question is constitutionally infirm, I would require that the State Board *comply with our own fundamental law mandating uniform assessment ratio for all entities within the same class.*

## VI

### CONGRESS MAY NOT AUTHORIZE THE STATES TO VIOLATE THE EQUAL PROTECTION CLAUSE

*Assuming* that the two federal acts *are not infirm* when tested for conformity to the 5th

---

*Stanton v. Stanton,* 421 U.S. 7, 13–14, 95 S.Ct. 1373, 1377, 43 L.Ed.2d 688 (1975).

**34.** *Clements v. Fashing,* 457 U.S. 957, 964, 102 S.Ct. 2836, 2844, 73 L.Ed.2d 508 (1982).

**35.** Art. 6, cl. 2, U.S. Const., states in pertinent part:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, ...."

**36.** *Pac. Gas & Elec. v. St. Energy Resources Conserv.,* 461 U.S. 190, 203–204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983).

**37.** *Shapiro, supra* note 28, 394 U.S. at 630, 89 S.Ct. at 1325; *Graham, supra* note 28, 403 U.S. at 382, 91 S.Ct. at 1857.

**38.** The terms of Art. 10, § 5, Okl. Const., are:

"The power of taxation shall never be surrendered, suspended, or contracted away. Taxes shall be uniform *upon the same class of subjects.*" (Emphasis added.)

**39.** The terms of Art. 10, § 22, Okl. Const., are:

"Nothing in this Constitution shall be held, or construed, to prevent the classification of property for purposes of taxation; and the valuation of *different* classes by different means or methods." (Emphasis added.)

**40.** Art. 10, § 5, Okl. Const., *supra* note 38. The terms of Art. 10, § 21, Okl. Const., are:

"A. There shall be a State Board of Equalization consisting of the Governor, State Auditor, State Treasurer, Lieutenant Governor, Attorney General, State Inspector and Examiner and President of the Board of Agriculture. The duty of said Board shall be to adjust and equalize the valuation of real and personal property of the several counties in the state ... and they shall assess all railroad and public service corporation property. *.* * *.*".

**41.** 68 O.S.1991 § 2803(A), *supra* note 18.

**42.** 68 O.S.1991 § 2864(C), *supra* note 3.

**43.** The terms of 68 O.S.1991 § 2808 provide in pertinent part:

"A. The term public service corporation, as used in the Ad Valorem Tax Code, shall include ... all persons authorized ... to use or occupy any right-of-way, street, alley, or public highway, along, over or under the same in a manner not permitted to the general public."

Amendment's anti-discrimination component, they must *nonetheless* be condemned as impermissible congressional commands to the states. This is so because both statutes clearly call for an unmistakable violation of the 14th Amendment's Equal Protection Clause.[44] The U.S. Supreme Court's jurisprudence inexorably commands the states to establish and follow an ad valorem tax regime that is not offensive to equal protection.[45] Federal *legislation*, on the other hand, requires that railroads and air carriers *not* be assessed at a higher ratio than that prescribed for commercial property.[46] The latter acts cannot be read in isolation from the *broader* U.S. constitutional mandate that calls upon the states to comply with equal protection guarantees.[47] Congress' statutory command that the states give air carriers and railroads preferential tax treatment plainly places the states' assessment regimes in contravention of the U.S. Supreme Court's equal protection jurisprudence. This is so because no rational basis exists for denying

pipelines (and other similarly situated landowners) the palladium afforded by the constitutional requirement for an assessment regime that would pass equal protection muster.[48]

"Congress may not authorize the States to violate the Equal Protection Clause."[49] Although "deference [must be given]. to congressional decisions and classifications, neither Congress nor a State can validate a law that denies the rights guaranteed by the Fourteenth Amendment."[50] The powers granted by the U.S. Constitution to the Congress or to the states "are always subject to the limitation that they may not be exercised in a way that violate[s] other specific provisions of the Constitution."[51]

The court today notes that the 4–R Act has been upheld by some federal courts[52] and that no state or federal court has ever declared either that act or TEFRA unconstitutional.[53] *The cases cited in the court's opinion are not persuasive as a legal barrier to*

See *Pure Oil Pipe Line Co. v. Cornish*, 163 Okl. 79, 20 P.2d 1041, 1043–44 (1933).

**44.** For the terms of the Equal Protection Clause of the 14th Amend., U.S. Const., see *supra* note 4; *Nordlinger, supra* note 4, 505 U.S. at ——, 112 S.Ct. at 2331.

**45.** *Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 U.S. 336, 344, 109 S.Ct. 633, 638, 102 L.Ed.2d 688 (1989); *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1973) *reh. denied* 411 U.S. 910, 93 S.Ct. 1523, 36 L.Ed.2d 200 (1973). *Hillsborough, supra note 30*, teaches that "[t]he equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. The right is the right to equal treatment." *Id.*, 326 U.S. at 623, 66 S.Ct. at 448. "[A] taxpayer, although assessed on not more than full value, may be unlawfully discriminated against by undervaluation of property of the same class belonging to others." *Southern Railway Co. v. Watts*, 260 U.S. 519, 526, 43 S.Ct. 192, 195, 67 L.Ed. 375 (1923).

**46.** *See* 4–R Act, *supra* note 16; TEFRA, *supra* note 17.

**47.** For the terms of the Equal Protection Clause of the 14th Amend., § 1, U.S. Const., see *supra* note 4; *see also Nordlinger, supra* note 4, 505 U.S. at ——, 112 S.Ct. at 2331.

**48.** Different treatment of similarly situated taxpayers does not violate equal protection so long as a rational basis exists for the disparity of treatment. *Lehnhausen, supra* note 45, 410 U.S. at 359, 93 S.Ct. at 1003.

**49.** *Shapiro, supra* note 28, 394 U.S. at 618, 89 S.Ct. at 1325; *Graham, supra* note 28, 403 U.S. at 382, 91 S.Ct. at 1857.

**50.** *Mississippi University, supra* note 28, 458 U.S. at 732–733, 102 S.Ct. at 3340 (citing *Katzenbach, supra* note 27).

**51.** *Rhodes, supra* note 28, 393 U.S. at 29, 89 S.Ct. at 9–10.

**52.** *See State of Arizona v. Atchison, Topeka and Santa Fe RR Co.*, 656 F.2d 398, 405 (9th Cir. 1981); *Louisville & Nashville RR Co. v. Louisiana Tax Comm'n*, 498 F.Supp. 418, 422 (1980); *Tennessee v. Louisville & Nashville RR Co.*, 478 F.Supp. 199, 206–207 (M.D.Tenn.1979), *aff'd*, 652 F.2d 59 (6th Cir.1981), *cert. denied*, 454 U.S. 834, 102 S.Ct. 135, 70 L.Ed.2d 114 (1981).

**53.** My research reveals no federal TEFRA jurisprudence which addresses the constitutional validity of the Act against an attack based on the 5th Amendment's anti-discrimination component. In *Salem Transp. Co. v. Port Authority of N.Y. & N.J.*, 611 F.Supp. 254, 258 (S.D.N.Y. 1985), the court held that a gross receipts fee levied by a market-participant local government

the court's recognition of the constitutional flaw to which I allude. In one of the cases, *Tennessee v. Louisville,* [54] the federal court applied a two-part test for determining the constitutionality of federal legislation *under the Commerce Clause:* such legislation, the court said, (1) must bear a rational nexus to an activity that affects interstate commerce; and (2) if Congress finds such a basis, it must select a reasonable and appropriate means of eliminating the detrimental effect the offending activity would exert on interstate commerce. None of these cases addressed the issue whether the federal legislation under our scrutiny today would pass constitutional muster either under the rational-basis test of the 5th Amendment's anti-discrimination component or under the 14th Amendment's Equal Protection Clause. In the absence of a binding Supreme Court precedent,[55] on substantive federal-law questions we follow, as a matter of *pure comity,* the Tenth Circuit pronouncements, and on issues affecting state action we defer to that court's constitutional jurisprudence.[56] *Because neither the U.S. Court of Appeals for the Tenth Circuit nor the highest federal Court ever has passed upon the issue before us here,*[57] *we need not today give deference to any extant federal case law.* In the exercise of its *inherent* authority under the U.S. Constitution, this court is competent to test the two federal statutes for constitutional orthodoxy.

## VII

## THE CONGRESSIONAL COMMERCE-CLAUSE POWERS DO NOT LEND SUPPORT TO THE VALIDITY OF THE TWO FEDERAL ACTS

*Bacchus Imports, Ltd. v. Dias*[58] struck down as violative of the Commerce Clause[59] a state excise tax which discriminated against interstate commerce by bestowing a commercial advantage (excise tax exemption) on sales of wine and liquor made from local products while imposing a 20% excise tax on foreign liquor. The Court held that the states may not build up their domestic commerce by means of unequal and oppressive burdens placed upon the industry and business of other states. *Bacchus* teaches that *state economic protectionism cannot be rested on the legislative "characterization of an industry as either 'thriving' or 'struggling' ".*[60]

The 4–R Act's purpose, stated in the congressional declaration of policy, is "to provide the means to rehabilitate and maintain the physical facilities, improve the operations and structure, and restore the financial stability of the railway system of the United States."[61] TEFRA's objective is "to provide for tax equity and financial responsibility."[62] Congress' solution to these goals was (a) § 11503, which prohibits discriminatory state taxation of railroad property[63] and (b)

---

entity violates neither the provisions of TEFRA nor Commerce Clause principles.

54. *Tennessee, supra* note 52 at 206–207.

55. No extant U.S. Supreme Court jurisprudence has addressed the constitutional validity of the federal law under scrutiny here (49 U.S.C.A. §§ 1513(d)(1)(A), 11503(b)(1)). In *Dept. of Revenue of Or. v. ACF Industries,* — U.S. —, 114 S.Ct. 843, 849, 127 L.Ed.2d 165 (1994), a recent case construing the 4–R Act, the Court merely held the act's definition of "commercial and industrial property" *excludes* property exempted under applicable law.

56. *Phillips v. Williams,* Okl., 608 P.2d 1131, 1135 (1980); *McLin v. Trimble,* Okl., 795 P.2d 1035, 1047 (1990) (Opala, J., dissenting).

57. In *Atchison, T. & S.F. Ry. Co. v. Lennen,* 640 F.2d 255, 258–259 (10th Cir.1981), the court interpreted the 4–R Act to authorize injunctive relief to facilitate the Act's enforcement, *but had before it no issues of a constitutional dimension.*

58. 468 U.S. 263, 272–273, 104 S.Ct. 3049, 3055–3056, 82 L.Ed.2d 200 (1984).

59. The pertinent terms of Art 1, § 8, cl. 3, U.S. Const., are:

"The Congress shall have power ... [t]o regulate Commerce with foreign Nations, and among the several States...."

60. *Bacchus, supra* note 58, 468 U.S. at 272–273, 104 S.Ct. at 3056.

61. *Burlington Northern Railroad Company v. Oklahoma Tax Commission,* 481 U.S. 454, 457, 107 S.Ct. 1855, 1857, 95 L.Ed.2d 404 (1987) (quoting from § 101(a), 90 Stat. 31).

62. Public Law 97–248, Sept. 3, 1982, 96 Stat. 324.

63. For the pertinent terms of 49 U.S.C. § 11503, see supra note 16; *see also Burlington Northern, supra* note 61, 481 U.S. at 457, 107 S.Ct. at 1858.

§ 1513(d), which similarly shields air carrier property.[64] If the states cannot protect struggling entities by classifying them for a more favorable tax treatment, neither can Congress (the latter by failing to extend its protective arm to less deserving public service corporations) command the states to discriminate against businesses in interstate commerce in a manner that offends the U.S. Supreme Court's Commerce Clause jurisprudence.[65] I would hence refuse today to give our imprimatur to federal legislation that places state governments in violation of the Commerce Clause by giving some public service corporations favorable tax treatment in an attempt to improve their financial stability, while denying the same economic advantage to others through an impermissible regime of *thriving/struggling* industry classification.

## VIII

## THE COURT'S ANALYSIS LEADS IT TO AN INDEFENSIBLE CONCLUSION

The State Board's *under*assessment of air carrier and railroad property will not pass constitutional muster under the 14th Amendment. The equal protection component of the 14th Amendment prohibits *that* state action which imposes on some members of a class burdens and liabilities which are not cast upon others similarly situated.[66] It makes no difference here whether the *under*-assessment of air carrier or railroad property comes about because of deliberate action by the State Board, legislative enactments or by federal-law compulsion. The impact remains the same. The 14th Amendment's Equal Protection Clause commands that pipeline property be accorded tax treatment that *is the same* as that extended to other public service corporations. In short, by *under*assessing railroad and air carrier property, *the state has denied the pipelines equal protection of the law.*

Because our constitutional command—that public service corporation property be taxed uniformly [67]—is not and has not been shown to offend against any federal fundamental-law mandate, we cannot use today federal preemption as an excuse for violating our own fundamental law.

## IX

## THE NATURE OF RELIEF TO BE GRANTED AS A REMEDY FOR THE OFFENDING ASSESSMENT RATIO

I would direct today that, upon due notice and hearings, the State Board set an across-the-board assessment ratio for *all* public service corporations. On the State Board's failure to do so within some reasonable period of time to be set by the court, I would direct that the petitioners could discharge their ad valorem tax liability at the assessment ratio now applicable *solely* to railroads and air carriers.[68]

Because my solution represents a *sharp break* with recent practice, I would give it prospective effect and make it apply to this

**64.** For the pertinent terms of 49 U.S.C. § 1513(d), see *supra* note 17.

**65.** *Rhodes, supra* note 28, 393 U.S. at 29, 89 S.Ct. at 9–10, teaches that the powers granted by the Constitution to the Congress or to the states "are always subject to the limitation that they may not be exercised in a way that violate[s] other *specific provisions of the Constitution.*"

**66.** *Nordlinger, supra* note 4, 505 U.S. at ——, 112 S.Ct. at 2331.

**67.** *See* Part V, *supra.*

**68.** Before promulgating the court's pronouncement *I would require the petitioners to join in this case as parties respondent all railroads and air* carriers presently benefiting from the acts of Congress that are under consideration in this proceeding and would invite all those added entities to show cause why these acts should not be declared infirm for underinclusiveness.

"Where a statute is defective because of underinclusion ... there exist two remedial alternatives: a court may either declare [it] a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion." *Califano v. Westcott,* 443 U.S. 76, 89, 99 S.Ct. 2655, 2663, 61 L.Ed.2d 382 (1979) (quoting *Welsh v. United States,* 398 U.S. 333, 361, 90 S.Ct. 1792, 1807–1808, 26 L.Ed.2d 308 (1970) (Harlan, J., concurring in result)); *Orr, supra* note 33, 440 U.S. at 272, 99 S.Ct. at 1108.

proceeding, to like challenges presently pending before the Court of Tax Review or before any administrative agency and to challenges now in the appellate litigation process;[69] I would expressly reject any refund claims to be pressed by the adversely affected entities for overpayment of taxes assessed against their property at the impermissible ratio during any past years.[70] Changes to be implemented in the assessment ratio would be postponed to take effect during the fiscal year beginning July 1, 1996.

## X

### SUMMARY

Federal legislation which treats differently members of the same class without a rational basis for the imposed disparity cannot pass constitutional muster when measured *either by* the anti-discrimination component of the 5th Amendment's Due Process Clause *or by* the U.S. Supreme Court's Commerce Clause jurisprudence. The two federal acts in question here are fatally flawed by an impermissible underinclusion which affords some common carriers (railroads and air carriers) protection from discriminatory state ad valorem tax regime but excludes out-of-hand other members of the same class. State legislation passed in response to these federal-law commands clearly violates the 14th Amendment. Because under my analysis the two federal acts are clearly constitutionally infirm, I would hold today that they cannot operate to preempt contrary state law. The State Board should hence be declared free of federal-law restraint, and indeed *required by our own fundamental law,* to set a reason-

able assessment ratio that *equally impacts the property of all public service corporations.* On the State Board's failure to act timely by establishing the required, even-handed assessment ratio, I would extend the benefit of the lower (railroad and air carrier) ratio to *all challengers,* who on like grounds are presently pressing claims before the Court of Tax Review or before any administrative agency, and to all those whose challenges are now in the appellate litigation process.

Lastly, I would give prospective effect to my pronouncement, making it apply to this case, to like challenges *presently* pending before the Court of Tax Review or before any administrative agency and to challenges *now* in appellate litigation process; I would expressly *reject* any refund claims to be pressed (by the adversely affected entities) for overpayment of taxes assessed against their property at the impermissible ratio during *any* past period and would postpone the effective date of the nonoffending ratio to be established to the fiscal year commencing July 1, 1996.

**KAUGER**, Justice, concurring in result:

Although the majority's discussion of equal protection rights has been centered upon the protection afforded by the United States Constitution and cases discussing its provisions, it has long been recognized that the due process clause found in art. 2, § 7 of the Okla. Const.[1] has a definitional range which is coextensive with its federal counterpart. The United States Constitution and the Oklahoma Constitution each contain built-in anti-discrimination components which afford pro-

---

69. The prospective effect I would give today is known as the "pipeline doctrine". That doctrine saves from extinction those *interests presently in litigation* (i.e., the case before the court and cases pending before trial tribunals or in the appellate litigation process) *or capable of being litigated* when the new rule is announced. For Oklahoma jurisprudence applying a new rule of law to cases in the *pipeline* see *Amoco Production v. Corp. Com'n of Okl.,* Okl.App., 751 P.2d 203, 208 (1986); *Schepp v. Hess,* Okl., 770 P.2d 34, 39 (1989); *Dow Jones & Co. v. State ex rel. Tax Com'n, Okl.,* 787 P.2d 843, 847 (1990); *Strelecki v. Oklahoma Tax Comm'n,* Okl., 872 P.2d 910, 915 n. 44 (1994); *Schulte v. Oklahoma Tax Commission,* Okl., 882 P.2d 65, 75 (1994). *James B.*

*Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 2444–2445, 115 L.Ed.2d 481 (1991), is a U.S. Supreme Court refinement of the pipeline doctrine aimed at securing equality for all claims that are pending, or for those capable of being litigated, when the new rule is announced; *see also Harper v. Virginia Dept. of Taxation,* 509 U.S. ——, ——, 113 S.Ct. 2510, 2518, 125 L.Ed.2d 74 (1993).

70. *Schulte, supra* note 69 at 74.

1. The Okla. Const. art. 2, § 7 provides:

"No person shall be deprived of life, liberty, or property, without due process of law."

tection against unreasonable or unreasoned classifications which serve no important governmental interests.[2] The same equal protection component found in the fourteenth amendment of the United States Constitution is present in the due process clause of art. 2, § 7.[3]

The Williams Companies are entitled to the privileges and guarantees found both in the United States and the Oklahoma Constitutions. Nevertheless, there is nothing arbitrary or irrational in the Legislature's classification providing a different taxing method for public service corporations, the railroads and airlines. The ad valorem tax scheme furthers a legitimate state interest aligning Oklahoma's tax laws with federal legislation. It does not violate the protections afforded by the Okla. Const. art. 2, § 7. My conclusion that the Williams Companies have failed to demonstrate a violation of equal protection or ad valorem uniformity requirements is based on the Oklahoma Constitution which provides bona fide, separate, adequate and independent grounds upon which to rest the holding.[4]

2. *Fair School Finance Council v. State,* 746 P.2d 1135, 1148 (Okla.1987).

3. *Callaway v. City of Edmond,* 791 P.2d 104, 106 (Okla.1990); *Fair School Finance Council v.*

*State,* see note 2, supra; *McKeever Drilling Co. v. Egbert,* 170 Okla. 259, 40 P.2d 32, 35 (1935).

4. *Michigan v. Long,* 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983).